# United States Court of Appeals
## For the First Circuit

No. 02-2330

UNITED STATES OF AMERICA,

Appellee,

v.

JOEL A. KEENE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Circuit Judge,

R. Arnold,[*] Senior Circuit Judge,

and Howard, Circuit Judge.

William Maselli, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

August 22, 2003

---

[*]Of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

**R. ARNOLD, <u>Senior Circuit Judge</u>.**   Joel Keene was convicted of possession with intent to distribute more than 500 grams of cocaine and possession with intent to distribute marijuana, and was subjected to forfeiture of his residence for his drug convictions.  He was sentenced to a total of sixty-six months' imprisonment with forty-eight months of supervised release.  He was fined $12,500.  He appeals the convictions, the fine, and the forfeiture on a variety of grounds.  We affirm in all respects.

After a decade of intermittent reports of drug dealing by defendant Keene from four separate informants, police obtained a nighttime, no-knock search warrant for his somewhat isolated residence in Norway, Maine.  They immediately found 23 kilograms of compressed marijuana, 3.86 kilograms of loose marijuana, and 890.7 grams of 60 per cent. pure cocaine in a garage adjoining the house, and smaller quantities of drugs along with drug paraphernalia in his house.  They arrested Keene and charged him with possession with intent to distribute the drugs.  His first trial ended in a mistrial.  His second trial was bifurcated, with the forfeiture count severed from the possession with intent to distribute charges.  He was convicted by a jury after a motion to suppress evidence obtained during the search was denied.  This appeal followed.

I.

Appellant raises six issues on appeal. First, he argues that the search warrant obtained by police was not supported by probable cause, because the information relied on was stale and there was no nexus with the property to be searched. Second, there was insufficient evidence of his possession of cocaine with an intent to distribute. Third, the instructions given to the jury on aiding and abetting and willful blindness were not supported by the evidence. Fourth, the prosecution's invitation to the jury to analyze defendant's handwriting was improper and denied him a fair trial. Fifth, the government made references to his lifestyle in its closing argument, which also denied him a fair trial. Finally, the defendant argues that the imposition of a fine was improper, and that the government's request for a forfeiture should have been denied.

## A. Probable Cause

Defendant argues that Maine Drug Enforcement agents relied on stale information to obtain a nighttime, no-knock warrant for his residence, and that evidence of drug dealing suggested by this information had an inadequate nexus to the property searched. We disagree.

Probable cause to issue a search warrant exists when "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will

-3-

be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The task of the reviewing court is to determine whether "a substantial basis" existed for the magistrate's determination that probable cause existed. Ibid. Factors to be considered in determining whether a search warrant should issue include "the value of corroboration of details of an informant's tips by independent police work." Id. at 241.

Police provided detailed information from four confidential informants to the magistrate judge in applying for the search warrant. Maine Drug Enforcement Special Agent Tony L. Milligan obtained this information. The first informant was interviewed in 1992 and provided specific information, while incarcerated, about his drug dealings with six individuals, including defendant, at a Saracens Motorcycle Club hangout. Members of the Saracens had been convicted of drug dealing. Other information provided by this informant had resulted in successful prosecution of significant drug traffickers. Two years later, a second informant, a concerned citizen with no criminal record who was "sick and tired" of drug activity connected with the Saracens Motorcycle Club, came forward. He too gave specifics about Keene's drug distribution activities and drug delivery services, and provided eyewitness accounts of his substantial, unexplained wealth. This information was also corroborated. In 1996, a third informant, a convicted felon, also provided information about

-4-

Keene's drug activities. Finally, a little more than a month before Agent Milligan applied for the search warrant, he received information from Somerset County Sheriff Detective Lt. Carl Gottardi about his interview with a highly reliable source, who was charged with no crime and was not paid for his information. This informant recounted first-hand observations of Keene's large-scale cocaine sales, and indicated that Keene also supplied drugs to the Saracens and Hell's Angels Motorcycle Clubs. In the month leading up to application for the warrant, this informant identified one of Keene's regular cocaine customers and provided details about Keene's habits which police corroborated.

Since the information provided by the four informants over a ten-year period was amply corroborated, was consistent with a drug conspiracy of long duration, and had been updated within the month before application for the warrant, there was probable cause for issuance of the warrant.

Defendant also argues that the information provided did not establish a sufficient nexus between drug activity and the property to be searched, and so the warrant should not have issued. See United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993). However, the informants provided information about drug sales by defendant, evidence of substantial wealth unexplained by his workers' compensation benefits, and the fact that he worked from home while recovering from back injuries for which he drew the

workers' compensation.  This information suggested that drug distribution was being organized from Keene's residence, a place which was safe and accessible.  United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999).  The information established a sufficient nexus with the property to be searched, and probable cause existed for the warrant to issue.

### B.  Sufficiency of Evidence

Drugs, drugs everywhere, but none belonged to defendant. This is the proposition of which defendant failed to convince a jury, and the one which he now asks this Court to accept.  We do not.

In order to prevail on a claim of insufficient evidence a defendant must make a "formidable showing."  United States v. Valerio, 48 F.3d 58, 63 (1st Cir. 1995).  To determine whether evidence was sufficient, "we examine the record in a light most favorable to the government, drawing all reasonable inferences in its favor, with an eye towards whether the proof would have allowed a rational jury to determine beyond a reasonable doubt that the defendant was guilty of the crime charged."  Ibid. (quoting United States v. Ortiz, 23 F.3d 21, 24 (1st Cir. 1994)).  Both direct and circumstantial evidence are considered, and the government's proof may lie "*entirely* in circumstantial evidence."  Ibid. Defendant argues that the drugs found by police at his home were found in a

garage bay to which many people had access, and that the government supplied no substantial evidence of sales of drugs by Keene.

When twenty officers executed the search warrant, after arresting Keene, his girlfriend, and his father, they searched defendant's garages. On entering the first garage, Agent Milligan was overwhelmed by the strong odor of fresh marijuana, and immediately noticed a large white cooler and packing materials on the floor. Inside the cooler were three large trash bags, each of which contained kilogram-sized bricks of compressed marijuana and a piece of paper with numbers written on it. The total weight of the marijuana found was fifty-two pounds. On the table at the back of the garage a triple beam balance scale and commercial digital scale were found with marijuana residue on them. Upstairs, more boxes with fresh marijuana residue, scales, and UPS labels were found, along with shipping boxes. In a corner of this garage, at the bottom of a pile of automobile tires was a metal ammunition canister inside of which were thirty-two knotted plastic bags, each of which contained a chunk of 60 per cent. pure rock cocaine. A five-gallon pail sat against the back wall with ziplock bags containing loose mildewed marijuana and bricks of fresh marijuana. Marijuana buds were found inside unmounted motorcycle tires. A blue plastic tub contained another ziplock bag of fresh, brick marijuana. In a hole in the brick wall was another tub containing marijuana in ten ziplock bags. Small amounts of marijuana,

cocaine, and drug paraphernalia were found throughout the house, as well as address books and ATV registrations. When confronted with these findings after his arrest, Keene responded that someone else must have put the drugs in his garage. The jury reasonably found this explanation incredible. Because substantial evidence existed to sustain defendant's convictions, we affirm.

C.   Instructions and Statements to the Jury

Appellant challenges both the District Court's instructions as to the government's burden of proof for willful blindness, and its instructions as to what was required to convict Keene of aiding and abetting.

The standard of review for a challenge of this type to jury instructions as erroneous is de novo. United States v. Marino, 277 F.3d 11, 28 (1st Cir. 2002). A willful-blindness instruction "is proper if a defendant claims a lack of knowledge, the facts suggest a conscious course of deliberate ignorance, and the instruction, taken as a whole, cannot be misunderstood as mandating an inference of knowledge." United States v. Masse, 816 F.2d 805, 812 (1st Cir. 1987). As this Court recently pointed out in another drug distribution case, "whether there was knowledge of drug dealing, or so much awareness that ignorance was willful blindness," may turn exclusively on circumstantial evidence. United States v. Corchado-Peralta, 318 F.3d 255, 258 (1st Cir. 2003). The District Court instructed members of the jury that they

"may" infer knowledge from conscious ignorance, not that they were required to do so. See United States v. Bilis, 170 F.3d 88, 92 (1st Cir. 1999). The instructions contained a clear explanation of what the jury was required to find in order to determine whether Mr. Keene had been willfully blind to the presence of large quantities of drugs on his property. In particular, the lower court explained that it was "important to bear in mind that mere negligence or mistake in failing to learn the facts is not sufficient. There must be a deliberate effort to remain ignorant of the fact." Jury Instructions at 10 (#32). The instructions gave an accurate statement of the pertinent law.

Appellant also argues that, because the crime of aiding and abetting was not charged in the indictment, the jury should not have been instructed about it. A defendant may be convicted as an aider and abettor if the evidence shows: (1) that the underlying offense was committed by a principal; (2) that the defendant consciously shared the principal's knowledge; and (3) that he "willfully associated himself in some way with the crime and willfully participated in it as he would in something he wished to bring about." United States v. Henderson, 320 F.3d 92, 109-10 (1st Cir. 2003). When asked about the fifty-two pounds of marijuana in his garage, Keene observed, "It's been there for a while." When told he faced serious drug charges, he asked that his girlfriend not be charged, stating "it's my house, it's my garage . . . . I

guess it's my responsibility."  He later speculated that "whoever put the marijuana there must have put the coke there as well."

An instruction on aiding and abetting may be given although there is no reference to the crime in the indictment. United States v. Footman, 215 F.3d 145, 154 (1st Cir. 2000). Indeed, a charge of aiding and abetting is implicit in indictments for substantive offenses. Ibid.  The revisor's note to 18 U.S.C. § 2 states that "one who puts in motion or assists in the illegal enterprise . . . is guilty as a principal even though he intentionally refrained from the direct act constituting the completed offense."  The instruction was proper, and since it had been given in Keene's first trial, which ended in a mistrial, he cannot claim that the charge came as a surprise to him in the second trial.  The instructions on aiding and abetting and willful blindness were proper.

### D.  Prosecutorial Statements

Defendant claims that in its closing argument the government erred in a manner serious enough to require reversal of the jury verdict, both by inviting the jurors to examine handwriting evidence in an improper fashion and by maligning defendant's character.  These claims are without merit.

The prosecution suggested that jurors could analyze handwriting evidence on numbered labels from drug containers by comparing it with samples of defendant's handwriting to establish

a connection between Mr. Keene and the drugs found on his property. Under 28 U.S.C. § 1731, "[t]he admitted or proved handwriting of any person shall be admissible, for purposes of comparison, to determine genuineness of other handwriting attributed to such person." The trier of fact is authorized to make such a comparison, with or without the benefit of expert testimony. Fed. R. Evid. 901(b)(3). See United States v. Scott, 270 F.3d 30, 49 n.13 (1st Cir. 2001).

To emphasize that handwriting comparisons could indeed be performed with only handwritten numbers (rather than letters) for comparison, the prosecution suggested that if jurors themselves wrote the same numbers on a piece of paper and compared them with the samples, they would see that written numbers too were distinctive. Defendant argues that in making this suggestion, the prosecutor asked the jurors to make a determination they were unqualified to make, and encouraged them to create evidence for the purpose of comparison. But the prosecutor merely suggested this mode of comparison and argued for a factual finding favorable to the government. He did not suggest it would be determinative of guilt. The jury was free to disregard the suggestion, especially since other substantial evidence connected Keene to the drugs. The prosecutorial statement did not constitute reversible error.

Defendant objects as well to the government's disparaging references in its closing statement to his lifestyle and character.

Because this issue is raised for the first time on appeal, we review only for plain error. Henderson, 320 F.3d at 105. Mr. Keene must show not only that the arguments were prejudicial and affected his substantial rights, but that, absent reversal, a miscarriage of justice would occur. Mr. Keene draws particular attention to the prosecution's emphasis on the fact that he had drawn workers' compensation for a period of years as an example of the government's attempt to malign his character by implying he was lazy or parasitical. Defendant misconstrues the thrust of this part of the closing argument. The transcript makes clear that the prosecution drew the jury's attention to the fact that Keene was not working a regular job in order to raise a question as to how, without regular income, he was able to afford a luxurious lifestyle. This was an eminently reasonable argument to make, given that it pointed to the likelihood that Mr. Keene's lifestyle was made possible by income from the sale of drugs. The prosecutor's statements were proper.

## E. Fine and Forfeiture

Defendant argues that the imposition of a fine of $12,500 by the court, when the pre-sentence investigation report (PSI) recommended against a fine, and the government failed to object to this recommendation, is improper. In these circumstances, we review imposition of a fine for abuse of discretion. United States v. Cunan, 152 F.3d 29, 37 (1st Cir. 1998). Cf. United States v.

<u>Thurston</u>, 2003 WL 21782339 at *23 (1st Cir.)(holding that where a lower court declines to impose a fine when it is mandated by statute, review of questions of law is <u>de</u> <u>novo</u>).

In recommending against a fine, the PSI had made the erroneous assumption that, after forfeiture of his residence, defendant would have no assets left with which to pay a fine. In fact, his known assets, even after forfeiture of his house, totaled over $50,000. The imposition of a fine at the lowest end of the Guideline range is well within judicial discretion, and Keene has not argued that he is unable to pay the amount. Further, the court offered Keene additional time to develop a response to the government's request for a fine at sentencing - time he chose not to use. We find no abuse of discretion in the imposition of a fine here. Whether to impose a fine is the prerogative of the court. That the PSI recommended against a fine, whether or not the recommendation was based on a mistake of fact, cannot be dispositive.

Having convicted defendant of possession of drugs with intent to distribute, the jury found defendant's residence was forfeit to the government. Defendant asserts that Fed. R. Crim. P. 32.2 requires a "more active and searching inquiry" than that engaged in by the District Court to justify this forfeiture, and that the government did not meet its burden of proof.

For the first time on appeal, defendant argues that under Apprendi v. New Jersey, 530 U.S. 466 (2000), the applicable standard of proof was proof beyond a reasonable doubt. However, other circuits have consistently refused to apply Apprendi requirements to criminal forfeitures. United States v. Vera, 278 F.3d 672, 673 (7th Cir. 2002); United States v. Cabeza, 258 F.3d 1256, 1257 (11th Cir. 2001) (per curiam); United States v. Corrado, 227 F.3d 543, 550-51 (6th Cir. 2000). The forfeiture is not viewed as a separate charge, but as "an aspect of punishment imposed following conviction of a substantive offense." Cabeza, 258 F.3d at 1257 (quoting Libretti v. United States, 516 U.S. 29, 39 (1995)). This is because "drug trafficking is at the core of the conduct at which the forfeiture statutes are directed." United States v. One Clipper Bow Ketch Nisku, 548 F.2d 8, 11 (1st Cir. 1977). This Court has observed with approval that "almost every circuit that has pronounced on the issue has held that the standard of proof as to forfeiture issues under section 853 . . . is a preponderance of the evidence." United States v. Rogers, 102 F.3d 641, 647 (1st Cir. 1996). The evidentiary standard used to impose the forfeiture was proper, as was the forfeiture itself. The preponderance standard was certainly satisfied here.

For the foregoing reasons, we affirm.