[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 5, 2007
THOMAS K. KAHN
CLERK

No. 06-12454
_____

D.C. Docket No. 05-00069-CR-3-002-MCR


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                          versus

DAVID EMORY FLEET,

                                        Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(September 5, 2007)**

Before CARNES, PRYOR and FARRIS,* Circuit Judges.

CARNES, Circuit Judge:

_____

    * Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit Court of
Appeals, sitting by designation.

This appeal presents the issue of whether the substitute property provision of the federal criminal forfeiture statute, 21 U.S.C. § 853(p), preempts the homestead exemption contained in the Florida Constitution and that state's tenancy by the entireties law.

## I.

In October 2005 a jury found David Fleet guilty on twenty-one counts in a multi-count superceding indictment stemming from his role in a fraudulent land-swap arrangement that bilked two unwitting investors out of more than 11 million dollars. The counts for which Fleet was convicted included charges of wire fraud, aiding and abetting wire fraud, money laundering, aiding and abetting money laundering, conspiracy to engage in money laundering, and making a materially false statement to an FBI agent during the investigation.

The superceding indictment notified Fleet that if he were convicted on any of the money laundering counts listed in the indictment, which charged a violation of 18 U.S.C. § 1957, the government would seek forfeiture of any real or personal property involved in or traceable to that money laundering. The forfeiture was authorized under § 982(a)(1), which provides that anyone found guilty of violating § 1957 shall forfeit any property "involved in" or "traceable to" the crime. Section § 982(b)(1) incorporates the provisions of 21 U.S.C. § 853, the criminal forfeiture

2

statute. The indictment also notified Fleet that if the forfeitable property was unavailable because of an act or omission on his part, the government would seek forfeiture of any other property he owned up to the value of the property that was subject to forfeiture under § 982(a)(1).

After Fleet's conviction, the district court entered a preliminary order of forfeiture that required him to forfeit $295,000 in cash to the government. Although Fleet stipulated to that forfeiture amount, he did not have enough cash to cover it. The government then filed a motion pursuant to 21 U.S.C. § 853(p) asking the district court to amend its preliminary order of forfeiture to substitute other property that Fleet owned which was not involved in or traceable to money laundering.

Specifically, the government asked the district court to order the forfeiture of Fleet's interest in his house and three automobiles. Fleet owned one of those vehicles outright, but he and his wife owned the other two cars and the house jointly. Fleet opposed the government's motion by arguing, among other things, that the Florida Constitution's homestead exemption, as well as that state's tenancy by the entireties law, shielded his home from forfeiture. Fleet never disputed that Congress could override those state law provisions if it intended to do so, but instead took the position that Congress had not intended to override

3

them with the substitute property provision of § 853(p).

The district court rejected Fleet's argument. It found that he had "transferred, deposited into the name of third parties, or otherwise disposed of the $295,000 in forfeited proceeds" with the result that the forfeited proceeds could not be located through due diligence. Concluding that § 853(p) preempted the Florida homestead exemption and tenancy by the entireties law, the court ordered that the: "defendant's indivisible one-half interest in the marital property is subject to forfeiture as a substitute asset under § 853(p). As to the matter of the vehicles, all of defendant's interest in those vehicles is subject to forfeiture under § 853(p)." (The order did not purport to forfeit the interest of Fleet's wife in any of that property, only his own interest.)

## II.

Pressing the same argument here as he did in the district court, Fleet contends that his interest in his home he owns jointly with his wife may not be forfeited as a substitute asset under 21 U.S.C. § 853(p). The state law provisions that Fleet relies on appear to protect the property in question to the extent that state law can do so. The Florida Supreme Court has interpreted the homestead

exemption, which is found in Article X, § 4 of the Florida Constitution[1], to forbid the civil or criminal forfeiture of homestead property.  Butterworth v. Caggiano, 605 So. 2d 56, 61 (Fla. 1992).  Likewise, a Florida appellate court has held that under that state's  law governing entireties property, see generally  Passalino v. Protective Group Sec., Inc., 886 So. 2d 295, 296–97 (Fla. 4th DCA 2004),[2] "neither spouse may sever or forfeit any part of the estate without the assent of the

---

[1] The homestead exemption in Art. X, § 4 of the Florida Constitution provides in part:

> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
> (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family[.]

[2] For a person to hold property in tenancy by the entireties six "unities" must be present:

> (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names).

Id. (citation omitted).

5

other . . . ." Sitomer v. Orlan, 660 So. 2d 1111, 1113 (Fla. 4th DCA 1995). At the same time, the federal substitute property forfeiture provision, 21 U.S.C. § 853(p), does not exempt homestead or entireties property. So, there may be a conflict.

If there is a conflict, federal law prevails under the Supremacy Clause, United States Const. Art. VI cl. 2, which is another way of saying that if Congress intended for federal law to preempt state law, it does. If, however, Congress did not intend for federal law to preempt state law, then there is no conflict and state law is to be honored in applying the federal law. See Freightliner Corp. v. Myrick, 514 U.S. 280, 287, 115 S. Ct. 1483, 1487 (1995); Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1122 (11th Cir. 2004); Pharm. Research & Mfrs. of Am. v. Meadows, 304 F.3d 1197, 1206 (11th Cir. 2002). That is what Fleet contends we have here, a situation where Congress did not intend for the provisions of the federal statute to override state law.

Fleet's contention relies on the fact that there is an express preemption provision in the subsection that provides for forfeiture of facilitating and derived property, 21 U.S.C. § 853(a), but none in the subsection that provides for forfeiture of substitute property, § 853(p), which is what we are dealing with in this case. This is how the relevant language of § 853 reads:

(a) Property subject to criminal forfeiture

6

Any person convicted of a violation of this subchapter or subchapter II of this chapter . . . shall forfeit to the United States, <u>irrespective of any provision of State law</u>–

>    (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
>
>    (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and
>    . . . .

(p)  Forfeiture of substitute property

>    (1) In general
>
>    Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of the defendant—
>        (A) cannot be located upon the exercise of due diligence;
>        (B) has been transferred or sold to, or deposited with, a third party;
>        (C) has been placed beyond the jurisdiction of the court;
>        (D) has been substantially diminished in value; or
>        (E) has been commingled with other property which cannot be divided without difficulty.
>
>    (2) Substitute property
>
>    In any case described in any of subparagraphs (A) through (E) of paragraph (1), <u>the court shall order the forfeiture of any other property of the defendant</u>, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

21 U.S.C. § 853(a), (p) (emphasis added).

Fleet argues that by including an express preemption clause ("irrespective of any provision of State law") in § 853(a) but omitting one from § 853(p), Congress must have intended to preempt state laws where the forfeiture is under the former but not where it is under the latter; it must have meant that state laws are preempted where facilitating or derived property is concerned, but not where substitute property is concerned. The Latin version of his logic is <u>inclusio unius est exclusio alterius</u> ("the inclusion of one is the exclusion of the other"). <u>See</u> <u>Russello v. United States</u>, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting <u>United States v. Wong Kim Bo</u>, 472 F.2d 720, 722 (5th Cir. 1972)) (alteration in original)).

This is a seductive argument, and we have been seduced by it before. In <u>Myrick v. Freuhauf Corp.</u>, 13 F.3d 1516 (11th Cir. 1994), we were faced with the question of whether the National Traffic and Motor Vehicle Safety Act preempted state tort law in a case involving a traffic accident caused by allegedly defective anti-lock brakes. <u>Id.</u> at 1518. The federal statute had a preemption provision which did not reach that specific situation, <u>id.</u> at 1521, and from the

8

inclusion of that express preemption clause we reasoned there could be no implied preemption, id. at 1522 ("[W]hen there is an express pre-emption provision we should not consider implied pre-emption . . . ."). In other words, the express inclusion of one thing excludes the implied inclusion of another. We thought that was pretty good logic, but the Supreme Court disagreed.

In disagreeing with our Myrick reasoning, the Supreme Court stated: "The fact that an express definition of the pre-emptive reach of a statute 'implies'—i.e., supports a reasonable inference—that Congress did not intend to pre-empt other matters does not mean that the express clause entirely forecloses any possibility of implied pre-emption." Freightliner Corp., 514 U.S. at 288, 115 S. Ct. at 1488. The Court did go on to find that there was no conflict between state and federal law in that case, id. at 289, 115 S. Ct. at 1488, but made it clear that the existence of an express preemption clause does not preclude a holding that there is implied preemption beyond the scope of the express provision, id. at 287–88, 115 S. Ct. at 1487–88 (explicitly rejecting the argument that "implied pre-emption cannot exist when Congress has chosen to include an express pre-emption clause in a statute").

Five years after Myrick, the Supreme Court reiterated its stance: "[A] pre-emption provision, by itself, does not foreclose (through negative implication) 'any possibility of implied [conflict] pre-emption.'" Geier v. Am. Honda Motor

9

Co., 529 U.S. 861, 869, 120 S. Ct. 1913, 1919 (2000) (quoting Myrick, 514 U.S. at 288, 115 S. Ct. at 1488) (second alteration in original).  In Irving v. Mazda Motor Corp., 136 F.3d 764 (11th Cir. 1998), we recognized the Supreme Court's pronouncement in Myrick and stated that "implied preemption is possible despite the presence of an express preemption clause."  Id. at 767 n.1 (citing Myrick, 514 U.S. at 286–87, 115 S. Ct. at 1487).  It is all a matter of congressional intent, Boyes v. Shell Oil Prods. Co., 199 F.3d 1260, 1267 (11th Cir. 2000), and the best place to look for that is in what Congress said, in the wording of the statute.  Id.

In describing the substitute property that may be forfeited, Congress spoke broadly in commanding that "the court shall order the forfeiture of any other property of the defendant."  21 U.S.C. § 853(p)(2).  "The word 'shall' does not convey discretion.  It is not a leeway word," but a word of command.  United States  v. Quirante, 486 F.3d 1273, 1275 (11th Cir. 2007).  The word "any" is not susceptible to fudging either.  As the Supreme Court and this Court have said on numerous occasions, "any" is a powerful and broad word.  It does not mean some or all but a few, but instead means all.  E.g., United States v. Gonzales, 520 U.S. 1, 5, 117 S. Ct. 1032, 1035 (1997); United States v. Alvarez-Sanchez, 511 U.S. 350, 358, 114 S. Ct. 1599, 1604 (1994); Price v. Time, Inc., 416 F.3d 1327, 1336 (11th Cir. 2005); CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1223

(11th Cir. 2001); <u>Coronado v. Bank Atl. Bancorp, Inc.</u>, 222 F.3d 1315, 1321–22 (11th Cir. 2000); <u>Merritt v. Dillard Paper Co.</u>, 120 F.3d 1181, 1185–86 (11th Cir. 1997).  Phrased somewhat differently, "the scope of the 'any' adjective is plenty wide to sweep in all of the noun category that follows."  <u>Price</u>, 416 F.3d at 1336.

The noun category that follows the word "any" here is "property," and Congress did not say that some or most substitute property could be forfeited, but instead said that "any" of it could be, up to the value of the missing assets that were used to facilitate, or were derived from, the crime.   There is no stated exception for homestead or entireties property.  If it had meant to do so, Congress could have excluded those types of property by name or said "except for property protected from forfeiture under state law."

That is what Congress did in the Bankruptcy Code—it explicitly exempted from treatment as part of the bankruptcy estate property that is exempt under state law, including homestead and entireties property.  11 U.S.C. § 522(b)(1) & (3)(A)-(B).  When Congress wants to exempt specific types or categories of property from the reach of federal statutes, it includes language doing that, as it has done in the Bankruptcy Code.  When it wants all property to be swept within the ambit of federal law, Congress uses terms like "any" without qualification or restriction, as it has done in the criminal forfeiture provision governing substitute property.

11

Our construction of § 853(p) is reinforced by § 853(o), which mandates that "[t]he provisions of this section shall be liberally construed to effectuate its remedial purposes." The remedial purpose of § 853 is to enforce "the old adage that crime does not pay." United States v. Monsanto, 491 U.S. 600, 614, 109 S. Ct. 2657, 2665 (1989) (quotation marks omitted); see also S. Rep. No. 98-225, at 201–02, 212 (1983), as reprinted in 1983 U.S.C.C.A.N. 3182, 3384–85, 3395 (stating that the purpose of § 853(p) is to address "one of the most serious impediments to criminal forfeitures. Presently, a defendant may succeed in avoiding the forfeiture sanction simply by transferring his assets to another [person] . . . or taking other actions to render his forfeitable property unavailable at the time of conviction."). That remedial purpose would be undermined if we construed § 853(p) in a way that allowed convicted defendants to evade its provisions by retaining their homestead or entireties property.

Our construction of § 853(p) is also reinforced by the Supreme Court's decision in United States v. Craft, 535 U.S. 274, 122 S. Ct. 1414 (2002), which construed a statutory provision, 26 U.S.C. § 6321, granting the Internal Revenue Service authority to place tax liens on "all property and rights to property . . . belonging to" a delinquent taxpayer. Acting under that statute, the IRS had placed a lien on a home that the taxpayer owned jointly with his wife in tenancy by the

12

entireties.  Id. at 276, 122 S. Ct. at 1419.  The wife brought an action against the government to quiet title to the home, id. at 277, 122 S. Ct. at 1419, and the issue the Supreme Court addressed was whether the taxpayer "had a separate interest in the entireties property to which the federal tax lien attached."  Id. at 278, 122 S. Ct. at 1420.  In concluding that he did, the Court held that the broad statutory language "all property and rights to property" showed a congressional intent to bring entireties property within the operation of federal law.  Id. at 283–88, 122 S. Ct. at 1422–26.  Just as the broad language of the tax lien provision was held to cover entireties property in Craft, we hold that the broad language of the substitute property forfeiture provision covers that type of property as well.

Our decision here is also consistent with United States v. Lot 5, Fox Grove, Alachua County, Fla., 23 F.3d 359 (11th Cir. 1994), where we held that the federal civil forfeiture statute, 21 U.S.C. § 881(a), which has no express preemption clause, nonetheless preempts the homestead exemption contained in Florida's Constitution.  Id. at 363; see also United States v. One Parcel of Real Estate at 3262 S.W. 141 Ave., Miami, Dade County, Fla., 33 F.3d 1299, 1301 n.6 (11th Cir. 1994) ("We have held that federal forfeiture law preempts the Florida homestead exemption from forfeiture."); United States v. Bollin, 264 F.3d 391, 421–24 (4th Cir. 2001) (concluding that money defendant had placed in IRA account was

subject to restraining order because that money was potentially forfeitable as a substitute asset under § 853(p) despite Georgia law shielding IRA funds).

Our decision, however, is not consistent with the Seventh Circuit's decision in United States v. Lee, 232 F.3d 556 (7th Cir. 2000). Although the Lee Court did not address Florida's homestead forfeiture exemption, it did decide that a defendant's interest in a Florida home that he and his wife owned jointly in tenancy by the entireties was not subject to forfeiture as a substitute asset under § 853(p). Id. at 558–62. Oddly, the court in that case did not even mention preemption, much less undertake a preemption analysis. Instead, it deferred to Florida law at the expense of federal law. Id. at 560 ("We look to state property law to determine whether [the defendant's] interest in the Lee home was a property interest subject to forfeiture." (citation omitted)). After concluding that Florida law forbids forfeiture of property held in tenancy by the entireties, the Lee court engaged in a balancing-of-the-interests test:

> [T]he only claim the government has to the . . . house arises because the house could be treated as a substitute asset, pursuant to . . . 21 U.S.C. § 853(p). In such a case, the need to strike a balance between the government's interest in seizing the means for committing a crime and the innocent spouse's rights must be assessed differently. In our view, there is no warrant for ignoring the nature of the property right created by the state law—here, the Florida law of tenancy by the entirety—in a substitute asset case.

Id. at 561.

We disagree with the Lee decision. It is fundamentally wrong about which law determines forfeitability. While state law defines the property interests a defendant has, federal law determines whether those property interests are forfeitable for the commission of a federal crime. United States v. Kennedy, 201 F.3d 1324, 1334 (11th Cir. 2000) ("[F]ederal law decides what interests are subject to forfeiture."); see also United States Const. Art. VI. cl. 2. Congress has set out the law governing criminal forfeiture in 21 U.S.C. § 853. It is not the province of courts to "strike a balance" between the competing interests. Congress has already struck the balance. In doing so it has assessed those interests, and courts should not reassess them. Courts have no business carving out exceptions to statutory provisions. We should leave the carving to Congress.

Nothing that we say here is inconsistent with our decision in United States v. One Single Family Residence Without Buildings Located at 15621 S.W. 209th Ave., 894 F.2d 1511 (11th Cir. 1990). That was a civil forfeiture case in which we concluded that property held in tenancy by the entireties could not be forfeited if there is no indication that the defendant's spouse knew of the defendant's illegal conduct. Id. at 1520. The difference is that with civil forfeiture "the second clause of [21 U.S.C. §] 881(a)(7) expressly excepts the interest of an innocent

owner from forfeiture." Id. at 1513. Unlike its civil forfeiture counterpart, the criminal forfeiture statute involved in the present case contains no innocent owner exception. United States v. Jimerson, 5 F.3d 1453, 1455 & n.4 (11th Cir. 1993). Carving one out by judicial action not only would usurp the legislative role but also would ignore an important distinction between civil and criminal forfeiture.

Civil forfeiture acts in rem against the seized property itself, but criminal forfeiture acts in personam as a punishment against the party who committed the criminal acts. United States v. Gilbert, 244 F.3d 888, 919 (11th Cir. 2001) (citing United States v. Peters, 777 F.2d 1294, 1296 (7th Cir. 1985)). There is no innocent spouse defense to criminal forfeiture because the only property being forfeited is the interest that belongs to the defendant. The fact that the innocent spouse, even though she retains her property interest, may be adversely affected by the forfeiture of her guilty mate's interest is no bar to forfeiture of his interest. Jimerson, 5 F.3d at 1455 n.4.

## III.

For all of these reasons, we hold that where the forfeiture of substitute property is concerned, 21 U.S.C. § 853(p) preempts Florida's homestead exemption and tenancy by the entireties laws. It follows that the district court's order is **AFFIRMED**.

16