**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35955**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **2010 Opinion No. 42** |
| Plaintiff-Respondent, | ) |
| | ) **Filed: June 10, 2010** |
| v. | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| GINGER J. KEY, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Second Judicial District, State of Idaho, Idaho County.  Hon. Jeff M. Brudie, District Judge.

Order of the district court forfeiting vehicle, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.  Sarah E. Tompkins argued.

Hon. Lawrence G. Wasden, Attorney General; Rosemary Emory, Deputy Attorney General, Boise, for respondent.  Kenneth K. Jorgensen argued.

_____

GUTIERREZ, Judge

Ginger J. Key appeals from the district court's order forfeiting her vehicle after her guilty plea to possession of marijuana in a quantity greater than three ounces.  We affirm.

**I.**

**FACTS AND PROCEDURE**

After a drug dog alerted on Key's 1992 Toyota Celica, officers discovered approximately 5.23 ounces of marijuana[1] inside a backpack in the vehicle and approximately $2,100 cash in her purse.  Key was charged with possession of marijuana with the intent to deliver, possession of marijuana with the intent to deliver where a child is present, and possession of marijuana in an

_____

[1]     A detective later testified that the marijuana had a "street value" of approximately $200-$250 an ounce.

1

amount greater than three ounces. The state requested criminal forfeiture of Key's Toyota and the $2,100. The state later withdrew its request to forfeit the $2,100.

Key pled guilty to possession of marijuana in an amount greater than three ounces pursuant to a plea agreement. The state agreed to dismiss the remaining charges and recommend that the court retain jurisdiction. Key also reserved the right to challenge the state's request for the forfeiture of her vehicle.[2]

At the sentencing hearing, the parties stipulated that the value of Key's vehicle was $1,500, but also noted Key's reservation of the right to challenge the forfeiture. The state informed the court that it was relying on the testimony provided at the hearing on Key's suppression motions, as well as the material contained in the PSI report in support of its forfeiture request, and that it would not provide any additional evidence. It then argued that the vehicle should be forfeited on the basis that it had been used to possess and transport the large amount of marijuana found in the backpack. In turn, Key argued that forfeiture was not appropriate where she had pled guilty to mere possession as opposed to possession with an intent to deliver, there was no evidence that the vehicle was used to facilitate possession of the marijuana, and the state had not shown that the marijuana was purchased on the day of the stop.

The district court sentenced Key to five years imprisonment with two years determinate and retained jurisdiction, eventually placing Key on probation. It also ordered restitution in the amount of $800, and the forfeiture of Key's vehicle.[3] Key now appeals the forfeiture of her vehicle.

---

[2]    Specifically, the plea agreement contained the following provision:

> The State shall be free to present evidence and argument for criminal forfeiture of the personal property described in Paragraph 2 of this agreement. The Defendant shall be free to present evidence and argument that forfeiture of the personal property should not be ordered. The Court may order forfeiture of the personal property as provided by law.

[3]    The district court's order is entitled "Order of Civil Forfeiture." It is apparent, however, from the substance of the order that the court was ordering the forfeiture of Key's vehicle under the *criminal* forfeiture statute and thus, the heading was merely a clerical mistake.

## II.

## ANALYSIS

Key raises several issues on appeal in regard to the forfeiture, namely that her constitutional right to a jury trial under both the Idaho and Federal Constitutions was violated when the question of whether the state was entitled to forfeiture was tried before the district judge rather than a jury, that the court erred in failing to determine whether the size of the property forfeited was unfairly disproportionate to the size of the property actually used in the commission of the underlying offense and in determining that her vehicle was used to commit or facilitate the underlying offense, and that the forfeiture violated the Eighth Amendment prohibition against excessive fines.

### A. Constitutional Right to a Jury Trial

Key contends that her constitutional right to a jury trial, ensured by both the Idaho and Federal Constitutions, was violated when the issue of whether the state was entitled to forfeiture of her vehicle was tried before a district judge and not a jury, despite the fact that Key never waived her right to a jury determination of the issue. Given that the district court forfeited Key's vehicle pursuant to Idaho Code § 37-2801(2),[4] the state argues that Key failed to preserve the

---

[4]    Idaho Code § 37-2801 provides that:

> Any person who is found guilty of, who enters a plea of guilty, or who is convicted of a violation of the uniform controlled substances act, chapter 27, title 37, Idaho Code, punishable by imprisonment for more than one (1) year, no matter the form of the judgment or order withholding judgment, shall forfeit to the state of Idaho:
>
> . . . .
>
> (2) Any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation. The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to chapter 27, title 37, Idaho Code, that the person forfeit to the state of Idaho all property described in this section. The provisions of this chapter shall not be construed or interpreted in any manner to prevent the state of Idaho, attorney general or the appropriate prosecuting attorney from requesting restitution pursuant to section 37-2732(k), Idaho Code, or, if appropriate, from pursuing civil forfeiture pursuant to section 37-2744 and/or section 37-2744A, Idaho Code. . . . *The issue of criminal forfeiture shall be for the court alone, without submission to a jury, as a part of the sentencing procedure within the criminal action.*

(Emphasis added).

3

issue for appeal because she did not object to the statute's constitutionality below and Idaho courts have held that a party may not challenge the constitutionality of a statute for the first time on appeal. Key concedes that she is raising the issue for the first time on appeal, however, she contends that the prohibition against challenging the constitutionality of a statute for the first time on appeal does not bar her claim because her "actual assertion is based upon a direct violation of her personal constitutional right, and is not an abstract assertion that I.C. § 37-2801(2) is unconstitutional." While conceding that the statute is "pertinent to the issues regarding her right to a jury trial insofar as the statute has language that there is no right to a jury trial," she argues that "regardless of the language of the statute, [her] constitutional right to a jury trial would trump any contrary language in the statute; and therefore the statutory language is in no way dispositive of the analysis and outcome in this case." We first analyze whether we may address the issue for the first time on appeal, and concluding that we can, proceed to address the merits of Key's constitutional challenges.

### 1. Fundamental error

Idaho appellate courts have typically indicated that we will not consider the constitutionality of a statute for the first time on appeal. *See State v. Wiedmeier*, 121 Idaho 189, 192, 824 P.2d 120, 123 (1992) (refusing to consider an equal protection challenge to a statute where the issue had been raised for the first time on appeal); *State v. Fox*, 130 Idaho 385, 387, 941 P.2d 357, 359 (Ct. App. 1997) (refusing to consider whether an arson statute was unconstitutionally vague or overbroad where the defendant had failed to raise the issue before the trial court). However, in *State v. Hollon*, 136 Idaho 499, 36 P.3d 1287 (Ct. App. 2001), we indicated that we may address the constitutionality of a statute where the issue has not been preserved if we are persuaded that it would be fundamental error for this Court to allow a defendant to waive the right at issue. *Id*. at 503, 36 P.3d at 1291. In *Hollon*, the defendant had challenged for the first time on appeal the constitutionality of I.C. § 18-705, criminalizing resisting and obstructing officers, contending it was overbroad as it applied to him where he alleged that prosecution for his failure to cooperate with the officer was a violation of his First Amendment right to free speech. We did not reach the issue, however, noting that we were not persuaded that it amounted to fundamental error to allow the defendant to waive a challenge that the statute was overbroad as applied. *Id*.

4

Thus, we examine here whether it would be fundamental error to allow Key to waive a challenge to the statute as violating her state and federal constitutional rights to a jury trial where she did not raise the issue below. Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. *State v. Severson,* 147 Idaho 694, 716, 215 P.3d 414, 436 (2009). In this instance, the right implicated--the right to a jury trial--has been afforded the utmost regard. As we discuss below, Article 1, § 7 of the Idaho Constitution states that the "right of trial by jury shall remain inviolate." In *State v. Bennion*, 112 Idaho 32, 37, 730 P.2d 952, 957 (1986), our Supreme Court expounded on the historical importance of the right:

> The right to trial by jury always has been salient to the American people. In no less a document than the Declaration of Independence, our nation's founders grounded, in part, their dissolution of political ties with Great Britain on the King's "depriving us, in many cases, of the benefits of trial by jury." As the United States Supreme Court has observed, the Framers of both the federal and state constitutions interposed juries of citizens between governments and those persons the governments have accused of wrong in order to avert the abuse of authority:
>
> > The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government. Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power--a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges. Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the

5

> determination of guilt or innocence. *Duncan* [*v. Louisiana*, 391 U.S. 145, 155-56 (1968)].
>
> The Framers of the Idaho Constitution phrased their convictions in unequivocal fashion: "The right of trial by jury shall remain inviolate . . . ." Idaho Const. Article 1, § 7.
>
> "[T]his Court," Justice McQuade accurately observed, "has a duty to protect the people's rights as enumerated in the Idaho and United States Constitutions from legislative encroachment." *Thompson v. Hagan*, 96 Idaho 19, 24, 523 P.2d 1365, 1371 (1974). The right to a jury trial is a fundamental right, and must be guarded jealously.

*Bennion*, 112 Idaho at 36-37, 730 P.2d at 956-57 (citation omitted). *See also State v. Carrasco*, 117 Idaho 295, 297, 787 P.2d 281, 283 (1990) (recognizing that the right to a jury trial is a fundamental right such that a valid waiver of the right will not be inferred by mere silence but must be demonstrated by express and intelligent action on the part of the defendant); *State v. Wheeler*, 114 Idaho 97, 101, 753 P.2d 833, 837 (1998) (same). On this basis, we conclude that the claimed error in this instance qualifies for appellate review under the fundamental error doctrine such that we will address the merits of Key's constitutional challenges for the first time on appeal. *Accord State v. Hunnel*, 125 Idaho 623, 625, 873 P.2d 877, 879 (1994) (holding that claimed error regarding the waiver of defendant's Sixth Amendment right to counsel qualified as fundamental error).

### 2. United States Constitution

Key contends that her constitutional right to a jury trial, pursuant to the Sixth Amendment of the United Constitution, was violated when the issue of whether the state was entitled to forfeiture of her vehicle was tried before the district judge despite the fact that she never waived her right to a jury determination of the issue.

On appeal, Key concedes that the United States Supreme Court has addressed, and rejected, the assertion that there is a Sixth Amendment right to a jury determination in criminal forfeiture actions. *See Libretti v. United States*, 516 U.S. 29, 48-49 (1995). She counters, however, that the Court's basis for the *Libretti* decision has since been disavowed by the Supreme Court in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and their progeny. The state contends that this same argument has been made and repeatedly rejected by federal circuit courts of appeal throughout the country. In her reply brief, Key responds that these federal appeals cases were wrongly decided and continues to assert her Sixth Amendment argument.

In *Libretti*, the defendant argued that he enjoyed a constitutional right to have a jury decide the extent of his criminal forfeiture. In rejecting the argument, the Court explained that "the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection" because criminal forfeiture concerns sentencing, not the elements of a crime. *Id.* at 49. The Court disagreed with Libretti's characterization of forfeiture as a "hybrid that shares elements of both a substantive charge and a punishment imposed for criminal activity," *id.* at 40, and refused to put the forfeitability determination on a par with a jury determination of guilt or innocence, holding that any right to a "jury determination of forfeitability is merely statutory in origin," *id.* at 49.

In *Apprendi*, the Supreme Court examined a state hate crime statute that allowed for an increase in the maximum prison sentence based on a judge's finding by a preponderance of the evidence that the defendant acted with the purpose to intimidate the victim as a result of particular characteristics of the victim. *Id.* at 468-69. The Court held that because the finding increased the statutory maximum punishment, the question must be put to a jury. *Id.* at 497. The Court followed with a holding in *Blakely* that any fact, other than the fact of a prior conviction, which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *Blakely*, 542 U.S. at 305.

As the state points out, the argument that Key advances pertaining to *Apprendi* and its progenies' effect on *Libretti* has been rejected by every federal circuit court of appeals that has addressed it. In *United States v. Hall*, 411 F.3d 651 (6th Cir. 2005), the Sixth Circuit explained its holding that *Apprendi* and *Blakely* did not alter the holding of *Libretti*:

> And while [*United States v. Booker*, 543 U.S. 220 (2005)] (and [*Blakely*], before that) redefined what constitutes a statutory maximum for Sixth Amendment purposes, the forfeiture statute at issue in this case (and, we suspect, most forfeiture statutes) does not contain a statutory maximum. . . . The absence of a statutory maximum or any sort of guidelines system indicates that the forfeiture amounts to a form of intermediate sentencing, which has never presented a Sixth Amendment problem.

*Hall*, 411 F.3d at 654-55. *See also United States v. Leahy*, 438 F.3d 328, 332 (3d Cir. 2006) (holding that *Libretti* "flatly holds that the Sixth Amendment is not implicated in the forfeiture context" and that the circuit court is "not free to ignore the Supreme Court's holding in *Libretti*" nor do they "possess the authority to declare that the Supreme Court has implicitly overruled one of its own decisions"); *United States v. Fruchter*, 411 F.3d 377, 383 (2d Cir. 2005) (holding that

7

neither *Apprendi*, *Blakely* or *United States v. Booker*, 543 U.S. 220 (2005), altered *Libretti's* holding); *United States v. Washington*, 131 Fed. Appx. 976, 977 (5th Cir. 2005) (holding that "*Libretti* has not been overruled by *Blakely*" and therefore *Libretti* controls the constitutional issue "unless and until the Supreme Court itself determines to overrule it"); *United States v. Messino*, 382 F.3d 704, 713 (7th Cir. 2004) (holding that *Blakely*, like *Apprendi* does not apply to forfeiture proceedings where criminal forfeiture proceedings have no statutory maximum); *United States v. Keene*, 341 F.3d 78, 85-86 (1st Cir. 2003) (recognizing that other circuits have consistently refused to apply *Apprendi's* requirements to criminal forfeitures and following suit); *United States v. Shyrock*, 342 F.3d 948, 991 (9th Cir. 2003) (holding that *Apprendi* did not disturb previous federal law on criminal forfeiture); *United States v. Najjar*, 300 F.3d 466, 485-86 (4th Cir. 2002) (holding that nothing in *Apprendi* overruled the Supreme Court's precedent that criminal forfeiture determinations were not subject to the Sixth Amendment right to a jury trial); *United States v. Cabeza*, 258 F.3d 1256, 1257 (11th Cir. 2001) (holding that because criminal forfeiture is a punishment and not an element of an offense, it does not fall within the reach of *Apprendi*).

We find the circuit courts' analysis of this issue persuasive and decline to deviate from their unanimous interpretation of federal constitutional law. Therefore, Key's contention that her federal constitutional right to a jury trial was violated by the forfeiture proceeding in this case fails.

### 3.      Idaho Constitution

Key also argues that Article 1, § 7 of the Idaho Constitution guarantees her a right to a jury determination regarding the facts underlying the forfeiture of her vehicle. Specifically, she contends that the provision of Article 1, § 7 that the "right of trial by jury shall remain inviolate" provides for a right to a jury determination despite the provision of I.C. § 37-2801(2) that the forfeiture determination is for the court only.

Initially we note that state constitutions can afford greater procedural protections to accused persons than does the Federal Constitution, such that we are not bound by our conclusion regarding the Federal Constitution when interpreting our state provision. *Bennion*, 112 Idaho at 35, 730 P.2d at 955; *Gibson v. State*, 110 Idaho 631, 635, 718 P.2d 283, 287 (1986).

In *Bennion*, 112 Idaho 32, 730 P.2d 952, the Idaho Supreme Court undertook an extensive analysis of the Article 1, § 7 jury trial provision to determine whether the Idaho Traffic

Infractions Act, which defined infractions as "civil public offense[s] . . . for which there is no right to trial by jury . . . .," was violative of the Idaho Constitution's directive that the right to a jury trial remain inviolate. Initially, the Court engaged in a lengthy discussion as to how Article 1, § 7 is to be construed in determining whether the right to a jury trial exists in a specific proceeding, first stating:

> This Court long and often has stated that Article 1, § 7 preserves the right to jury trial as it existed at the common law and under the territorial statutes when the Idaho Constitution was adopted. . . . Most jurisdictions interpret their analogous constitutional provisions in an analogous way. The standard embodies the common sense notion that, by employing the phrase "shall remain inviolate," the Framers must have intended to perpetuate the right as it existed in 1890.

*Id*. at 37, 730 P.2d at 957 (citations omitted). The Court then noted that despite this rule, the Framers "did not intend to *literally* freeze the law precisely as it existed in 1890" as this "would yield the absurd result of affording no right to jury trial to those accused of crimes that happened not to be in statutory or common law existence at that arbitrary point in history" and pointed out that the Framers had been well aware of the nature of constitutions such that they are general rules and laws "to give general directions and lay a foundation that is broad enough for legislative enactment . . . ." *Id*. at 37, 730 P.2d at 957 (citations omitted). The court concluded, the Framers did not mean for "Article 1, § 7 to serve as a shorthand enactment into perpetuity of existing statutory and common law on the right to jury trial." *Id*. at 38, 730 P.2d at 958. The Court summarized its approach to interpreting Article 1, § 7 stating:

> Certainly the right to a jury trial as it existed in 1890 is the beginning point of our analysis of the meaning of Article 1, § 7. The "claims of history", of necessity, will "weigh heavily." [Felix Frankfurter and Thomas G. Corcoran, *Petty Offenses and the Constitutional Guaranty of Trial by Jury,* 39 HARV. L. REV. 917, 922 (1926)]. Though we are not bound by historic stereotype, we will endeavor to interpret Article 1, § 7 *consistent with* the right to jury trial as the Framers conceived it. . . .

*Id*.

The Court proceeded to review the territorial laws of Idaho at the time of the passage of the state constitution, as well as the common law and the federal law as they existed at the time. It came to the conclusion that the territorial statutes had provided for the right to a jury trial that was significantly more expansive than that afforded by either the common law or federal law at the time--and had specifically stated that the statutes adopted the common law of England only

9

in cases not provided for in the statutes. The Court stressed that "every indication from the law of 1890 and from the deliberations of the constitutional convention points to there being a right to a jury trial in every extant criminal action, with the probable exception of some contempt proceedings and the removal of public officials."[5] And by dictating in Article 1, § 7 that the right to a jury "*shall remain* inviolate," it was implied that the Framers "intended to perpetuate at least in a general way the existing right to a jury trial." *Id*. at 41-42, 730 P.2d at 961-62 (emphasis added).

The Court noted that the language of Article 1, § 7 and Article 5, § 1 did not preclude the existence of a future defined class of crimes to which the right to a jury trial does not apply as the Framers chose not to expressly require that all criminal actions be tried before a jury. *Id*. at 42-43, 730 P.2d at 962-63. After a lengthy discussion, the Court ultimately concluded that crimes not punishable by imprisonment did not require a trial by jury. *Id*. at 44, 730 P.2d at 964. This did not end the inquiry, however. The Court continued:

> This is not to say that crimes not potentially punishable by imprisonment never fall under the requirements of Article 1, § 7. The Framers expressed some concern for the deprivation of property rights as well as liberty without the benefit of a jury trial. *Proceedings and Debates of the Constitutional Convention of Idaho* 152, 158, 229 (1889). Means of sanction other than imprisonment, such as fines and the deprivation of privileges or offices, if serious and substantial enough, can rise to the level of criminal sanction. At some point the sanction crosses the line between remedial, regulatory, compensatory, or coercive, and becomes punitive. In such a case, Article 1, § 7 would apply. The measure to look to in judging whether or not a sanction is punitive is the maximum penalty.

*Id*. (citations omitted).

Applying this framework, the Court concluded that the Traffic Infractions Act was not unconstitutional in denying a party charged under the act a jury trial. Among other things, the Court noted that a party charged under the act faced no imprisonment. In addition, the Court concluded that the sanction imposed--a fine not exceeding $100--did not rise to the level of a punitive, criminal sanction where $100 appears to be "reasonable and thus remedial rather than punitive in nature." Therefore, a defendant was not entitled to a jury trial in such instances.

---

[5] The Court compared this with the common law of England, which provided for "a great volume of offenses" to be tried without a jury as well as the federal law which, at the time, dispensed with juries in misdemeanor trials. *State v. Bennion*, 112 Idaho 32, 38-39, 42, 730 P.2d 952, 958-59, 962 (1986).

While *Bennion* is instructive, it is not dispositive--even if we were to conclude that criminal forfeiture is "punitive" in nature, because *Bennion* discusses when a jury trial is required to determine a defendant's guilt of an underlying crime--not, as is the case here, the facts necessary to fashion a portion of the sentence *after* a defendant has already been found guilty (or pled guilty) to an underlying crime. Thus, following *Bennion's* general analytical framework, we examine the state of the common law in regard to the right to a jury trial in forfeiture actions at the time Idaho's Constitution was enacted, but first, for the sake of clarity, we examine the nature of criminal forfeiture as opposed to civil forfeiture.

The classical distinction between civil and criminal forfeiture was founded upon whether the penalty assessed was against the person or against the thing. *United States v. Seifuddin*, 820 F.2d 1074, 1076 (9th Cir. 1987). Forfeiture against the person operated *in personam* and required a *conviction* before the property could be wrested from the defendant. *Id.* (citing *Calero-Toledo v. Pearson Yacht Leasing, Co.*, 416 U.S. 663, 682 (1974); *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 700 (1965)) (emphasis added). Such forfeitures were regarded as criminal in nature because they were penal; they primarily sought to punish. *Seifuddin*, 820 F.2d at 1076. Forfeiture against the thing was *in rem*, and the forfeiture was based upon the unlawful use of the *res,* irrespective of its owner's culpability. *Id. See also* Kirk W. Munroe, *Surviving the Solution: The Extraterritorial Reach of the United States,* 14 DICK. J. INT'T L. 505, 515 (1996) ("As this is a civil forfeiture action, the U.S. government need not bring criminal charges, either before or after the forfeiture. [It can] forfeit assets without ever bringing a criminal charge against anyone involved with the asset.").[6] These forfeitures were regarded as civil; their purpose was remedial. *Seifuddin*, 820 F.2d at 1077 (citing *Calero-Toledo*, 416 U.S. at 680-81; *United States v. United States Coin & Currency*, 401 U.S. 715, 719 (1971)). In other words, civil forfeiture acts *in rem* against the seized property itself, but criminal forfeiture acts *in personam* as a punishment against the party who committed the criminal acts. *United States v.*

---

[6] In fact, the government not only has no duty to prove beyond a reasonable doubt that a crime was committed, it also has no duty to prove a crime by clear and convincing evidence or even by a preponderance of the evidence. *State v. Edwards*, 787 So. 2d 981, 990-91 (La. 2001). The government must only prove that there was probable cause to believe that the property was used in connection with a crime. This burden of proof is made possible by the legal fiction that the property itself is guilty. *See United States v. Ursery*, 518 U.S. 267, 275 (1996).

*Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007). In a criminal forfeiture, the only property subject to forfeiture is that which belongs to the criminal defendant. *Id*. at 1232.

We now turn to the state of the law regarding this issue at the time the Idaho Constitution was adopted. Initially, we note that a review of Idaho's territorial statutes at the time did not reveal any provisions applicable to criminal forfeitures. Such a dearth is not surprising given that the use of criminal forfeiture had fallen out of favor at this time. While rooted in English law and adopted briefly by the American colonies prior to formation of the United States, following the ratification of the United States Constitution the use of criminal forfeiture "quickly went out of style" and in short order the First Congress, as well as several states, banned the use of *in personam* forfeiture and other predicates of the modern criminal forfeiture. Matthew R. Ford, *Criminal Forfeiture and the Sixth Amendment's Right to Jury Trial Post-Booker*, 101 NW.U.L.REV. 1371, 1402-03 (2007). *See also United States v. Bajakajian*, 524 U.S. 321, 332 n.7 (1998) ("The First Congress explicitly rejected *in personam* forfeitures as punishments for federal crimes . . . and Congress reenacted this ban several times over the course of two centuries.") (internal citations omitted). According to one commentator, American legislatures "effectively laid criminal forfeiture to rest for the next two centuries." Ford, *supra* at 1403.[7] Even Great Britain abolished the use of common law (*in personam*) forfeiture in 1869. Eric R. Markus, *Procedural Implications of Forfeiture Under RICO, the CCE, and the Comprehensive Forfeiture Act of 1984: Reforming the Trial Structure*, 59 TEMP. L.Q. 1097, 1104-05 (1986) (noting that because it was abolished so long ago, "[n]o opportunity existed for the doctrine and procedures implementing it to evolve and to keep pace with modern notions of due process of law," such that the "British experience . . . provides no guidance as to how a RICO or CCE forfeiture trial should proceed").

It was only in 1970 that Congress resurrected the English common law of punitive forfeiture to combat organized crime and major drug trafficking. *Bajakajian*, 524 U.S. at 332 n.7 (citing Organized Crime Control Act of 1970, 18 U.S.C. § 1963 [which established, among other things, RICO provisions] and Comprehensive Drug Abuse Prevention and Control Act of 1970,

---

[7]    In the absence of criminal forfeiture, the use of *in rem* forfeiture came to predominate American forfeiture law as the use of statutorily imposed forfeiture predicated on the "in rem fiction" developed expansively. Ford, *supra* at 1403.

21 U.S.C. § 848(a)). In providing for this mode of punishment, which had long been unused in this country, the Senate Judiciary Committee acknowledged that "criminal forfeiture . . . represents an innovative attempt to call on our common law heritage to meet an essentially modern problem." *Bajakajian*, 524 U.S. at 332 n.7 (citing S. Rep. No. 91-617, p. 79 (1969)).[8]

Thus, in 1890, neither federal law nor the common law in Britain recognized the continued use of criminal forfeiture. However, the general common law approach to the use of juries in criminal forfeiture prior to abandonment of criminal forfeiture is instructive to our inquiry. On appeal, Key argues that there was a "right to jury trial in statutory forfeiture actions at common law." Specifically, she cites to *Idaho Dep't of Law Enforcement v. Free*, 126 Idaho 422, 427, 885 P.2d 381, 386 (1994), wherein the Idaho Supreme Court held that to the extent that Idaho's civil forfeiture statute did not provide for a jury trial, it was unconstitutional, based on its finding that it was "uncontroverted that forfeitures existed, and were afforded a jury trial, under English and American practice." However, *Free* clearly was decided in the context of *civil* forfeitures which, as we discussed above, are distinct proceedings from those involving criminal forfeitures (where an underlying criminal conviction is required) and have historically been afforded different standards of proof and different trial procedures. Thus, that the Idaho Supreme Court found a state constitutional right to jury trial in civil forfeiture proceedings is not dispositive of the issue here.

We thus turn to an inquiry into the common law as it applied to criminal forfeitures. The Advisory Committee Notes accompanying the 1972 amendment to former FED. R. CRIM. P. 7, cited in numerous federal court opinions, stated that "[u]nder the common law, in a criminal forfeiture proceeding, the defendant was apparently entitled to notice, trial, and a *special jury*

---

[8] The federal rule of criminal procedure initially applicable to criminal forfeiture proceedings, provided for a jury determination "as to the extent of the interest of property subject to forfeiture, if any." *Seifuddin,* 820 F.2d at 1078 (citing former FED. R. CRIM. P. 31(e)). Currently, despite the Supreme Court's holding that criminal forfeiture is an aspect of sentencing that does not constitutionally require a jury trial (see above), FED. R. CRIM. P. 32.2 allows either party to request an initial jury determination that the allegedly forfeitable property has a sufficient "nexus" to the defendant's crime to be forfeitable. However, the jury does not determine the extent of the defendant's property interest in the forfeitable property. Advisory Committee Notes, 2000 Adoption, Subdivision (b) (citing 21 U.S.C.A. Sec. 853(n)(2)) ("court alone, without a jury" decides whether the defendant had an interest in the property to be forfeited.). Rather, the court decides at an ancillary proceeding the extent of third parties' interests in the forfeited property.

13

*finding* on the factual issues surrounding the declaration of forfeiture which followed his criminal conviction." Several commentators, however, have noted that the advisory committee's reliance on common law tradition in regard to the right to a jury determination of the property to be forfeited is "misplaced." Note, *A Proposal to Reform Criminal Forfeiture Under RICO and CCE*, 97 HARV. L. REV. 1929, 1937 (1984). *See also* Ford, *supra* at 1402. As the author states in *A Proposal to Reform Criminal Forfeiture*:

> Although it is true that at common law the jury customarily reported the size of the defendant's holdings after announcing the verdict in a felony case, this jury report was simply one of a number of bookkeeping devices used to facilitate collection of the forfeiture penalty. Under the common law rule, *all* the offender's property was forfeited; the jury had no legal power to protect the defendant against an excessive forfeiture. Furthermore, the drafters of the federal forfeiture rules overlooked the fact that the first Congress had rejected the common law approach partly because it failed to treat forfeiture as a discretionary part of sentencing to be applied by judges.

Note, *supra* at 1937-38 (citations omitted) (emphasis added). *See also* Ford, *supra* at 1402 (noting that despite the need for a jury, its role was limited as it only convicted the offender, because all of the offender's property was forfeited after a felony conviction and therefore the jury could not govern the scope of the forfeiture).

Based on the foregoing analysis--most specifically the fact that Idaho courts have repeatedly stated that Article 1, § 7 preserves the right to jury trial as it existed at the common law and under the territorial statutes *when the Idaho Constitution was adopted*, we conclude that the Idaho Constitution does not require a defendant be afforded the right to a jury trial in criminal forfeiture proceedings. As we described above, criminal forfeiture had fallen out of favor and did not exist in the federal law or in English common law at the time the Idaho Constitution was adopted, and so, to the extent that the Idaho Framers intended that Article 1, § 7 retain the right to jury trial as it existed at the time, the right to a jury trial in criminal forfeiture proceedings would not be included. Thus, we cannot say that the Idaho legislature ran afoul of the Idaho Constitution by choosing to exclude juries from criminal forfeiture proceedings.[9]

---

[9] The North Carolina Court of Appeals reached a similar conclusion in *State v. Morris*, 405 S.E.2d 351 (N.C. Ct. App. 1991). There, the court examined whether a defendant whose vehicle was subjected to a drug-related criminal forfeiture under the state's criminal forfeiture statute (whose plain language implies that a judge is to make forfeiture determinations) had a right to a

**B.** **Use of Vehicle in Facilitation of Offense**

Key argues that the district court abused its discretion in determining that her vehicle was used to commit or facilitate the offense of possession of marijuana, and therefore, it was an abuse of discretion to grant the state's motion for forfeiture of her vehicle.

In pertinent part, I.C. § 37-2801(2) provides that:

> Any person who is found guilty of, who enters a plea of guilty, or who is convicted of a violation of the uniform controlled substances act . . . punishable by imprisonment for more than one (1) year, no matter the form of the judgment or order withholding judgment, shall forfeit to the state of Idaho:
>     . . . .
>     (2) Any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation.

The propriety of the forfeiture of Key's vehicle turns upon the language of section 37-2801(2), which authorizes forfeiture only of property that was used or intended to be used to commit or facilitate "the commission of *such violation.*" In context, the words "such violation" plainly refer to the specific violation of which a defendant has been found guilty. In this respect, section 37-2801(2), which is a *criminal* forfeiture statute, differs significantly from the *civil* forfeiture provision within the Uniform Controlled Substances Act, I.C. § 37-2744. The latter statute authorizes forfeiture of, among other things, "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used or intended for use, to transport, or in any manner to facilitate the transportation, delivery, receipt, possession or concealment, for the purpose of distribution or receipt of" controlled substances that have been possessed or distributed in violation of the U.C.S.A., I.C. § 37-2744(4). Unlike the civil forfeiture statute, section 37-2801(2) limits criminal forfeiture to property that facilitated the crime for which the defendant

---

jury trial as to the forfeiture. North Carolina courts have held, similar to Idaho courts, that the right to a trial by jury applies only to cases in which the right existed at common law or was procured by statute at the time the Constitution was adopted (in their case, 1868). The court then went on to note that legislation providing for the forfeiture of conveyances used to facilitate the violation of alcohol control laws was first enacted in 1915, noting (without much discussion) that the right to jury trial in this instance was procured by statute and did not exist at the common law or under any statute in 1868 and therefore the court held that no such right currently exists.

15

has been convicted. *See State v. Stevens*, 139 Idaho 670, 675, 84 P.3d 1038, 1043 (Ct. App. 2004).

Both Key and the state cite to *Stevens* in support of their respective positions. There, officers had been conducting surveillance at a residence where they knew methamphetamine was being sold. They were told by an informant that Stevens was dealing methamphetamine and had been purchasing two or three ounces of it at the residence every two to three days. Officers also knew that Stevens had been the subject of several prior narcotics investigations. Several days after the informant described Stevens' actions, the surveilling detective saw Stevens arrive at the residence on a motorcycle. While the detective could not see the front door, he stated that Stevens appeared to be pulling his wallet out of his back pocket as he started toward the door and after being out of view for three to five minutes, he reappeared and left on his motorcycle. Based on the belief that Stevens had just purchased drugs, the detective stopped Stevens, who admitted that he had in his possession a vial of methamphetamine, which he handed to the detective. He was arrested and during a search of his person, police found additional methamphetamine, $936 in cash, and apparent drug ledgers. Based on this evidence, officers obtained a warrant to search Stevens' residence where they found additional methamphetamine, paraphernalia, and cash.

Stevens was charged with trafficking in 28 grams or more of methamphetamine and the state requested criminal forfeiture of his motorcycle and over $9,000 in cash found during the searches. Stevens entered a conditional guilty plea to the charge and after a hearing, the district court forfeited the motorcycle. In doing so, the court concluded that Stevens had gone to the residence for the purpose of obtaining the methamphetamine, that his travel to the residence for that purpose was facilitated by his motorcycle, and that while it did "not appear that Stevens actually obtained methamphetamine on that date," his intention to do so brought the motorcycle within the class of property subject to criminal forfeiture.

In reversing the district court's forfeiture of the motorcycle, this Court first noted that Stevens had been convicted of possession with intent to deliver the particular methamphetamine found in his clothing and at his home and therefore, the state's burden was to prove that the motorcycle had been used to facilitate the possession of those drugs. We noted:

> The requisite relationship between the motorcycle and the offense would have been established if the State had proven that at least part of the drugs he was carrying were acquired during his visit to the residence after having driven there on his motorcycle. The district court found, however, that although Stevens rode

16

his motorcycle to the residence for the purpose of purchasing methamphetamine, the evidence was insufficient to show that he actually made a purchase at that time.

*Stevens*, 139 Idaho at 675, 84 P.3d at 1043.

We then noted:

> In its memorandum decision ordering the forfeiture, the district court relied heavily upon federal court decisions holding that even a slight nexus between a vehicle and an actual or attempted acquisition or distribution of drugs will suffice to justify a vehicle forfeiture. In general, however, these federal cases involved civil forfeiture proceedings under 21 U.S.C. § 881, which resembles I.C. § 37-2744(4) in that it does not limit forfeitures to property connected with the specific offense for which a defendant has been convicted. In the present case, the prosecutor elected to proceed with a criminal forfeiture under I.C. § 37-2801(2) rather than a civil forfeiture under I.C. § 37-2744(4), and thereby assumed the more difficult burden to prove a relationship between Stevens' motorcycle and the specific offense of which he was convicted. Had the prosecutor pursued civil forfeiture, the federal cases upon which the district court relied would be persuasive and the results of this appeal likely would be different.

*Id.* Finally, we concluded:

> As the district court found, the evidence presented by the State does not show that Stevens used his motorcycle to acquire the methamphetamine found in his clothing and at his home. The State does not argue to the contrary on appeal. No drugs were found in the motorcycle itself, and there was no evidence that Stevens had previously used the motorcycle to obtain the drugs he possessed when arrested or that he was using his motorcycle to deliver the drugs in his possession to another. The motorcycle therefore cannot be said to have facilitated the offense for which Stevens was convicted in this case.

*Id.* at 675-76, 84 P.3d at 1043-44.

In the instant case, the district court, citing *Stevens*, held that the fact that the drugs Key was convicted of possessing were found in a backpack taken from the passenger compartment of the vehicle is "adequate to meet the State's burden to prove a relationship between the vehicle and the marijuana possessed." On appeal, Key argues that the Stevens court indicated that "to establish the required nexus under I.C. § 37-2801, the vehicle must be somehow used in order to purchase or otherwise acquire, and therefore come into possession of, the drugs that are the subject of the defendant's crime." Thus, she contends that the requisite relationship between Key's car and the underlying offense was not established because there was no evidence in the record that Key used the vehicle in order to acquire the drugs, thereby facilitating her possession.

17

Noting the state's "sole" argument advanced below, that the car was used as a means of transporting the drugs, thereby facilitating their possession, Key argues that this is "merely an allegation of [a] fleeting and incidental relationship between Ms. Key's possession of the drugs and the vehicle itself" and that the state, therefore, did not carry its burden to "establish the required relationship of a direct and substantial connection between Ms. Key's car and her offense of possession of marijuana in excess of three ounces."

Contrary to Key's assertions, the holding of *Stevens* is not that there must be proof that a vehicle was utilized to acquire drugs in order for it to be forfeitable for a possession conviction, but that there must be some connection between the drugs and the vehicle. In *Stevens*, we specifically noted that the drugs had not been found in the motorcycle itself and thus looked to other possible connections between the drugs and the vehicle, finding none. By contrast in this case, the drugs were found in the vehicle itself, thus resulting in the requisite connection between the drugs and the vehicle. In addition, we note that in this case, the drugs were found in a gallon-size freezer bag in a relatively larger quantity than would normally be found on the person of a defendant--such as the vial of methamphetamine that was found in Stevens' jacket. Thus, utilization of the passenger compartment of the vehicle was useful as Key's means of "possession" of the drugs. It is also relevant to note that Key's placement of the drugs in the vehicle "facilitated" her possession of them to the extent that the vehicle allowed her to keep the drugs with her wherever she traveled. We therefore conclude that the district court did not abuse its discretion in granting the state's request for criminal forfeiture after having found the vehicle was used to facilitate the crime for which Key was convicted.

## C.   Proportionality

Key also argues that the district erred in failing to make a determination whether, pursuant to I.C. § 37-2809, the "size" of the property forfeited was unfairly disproportionate to the size of the property actually used in the commission of Key's underlying offense. Specifically, she contends that "[b]y statute, the size of the property that the State may be permitted to take in a forfeiture action is limited to the extent to which that property constituted an instrumentality of the offense" and argues that I.C. § 37-2809 codified the "instrumentalities test" under which the proportionality of forfeitures is fixed "not by determining the appropriate value of the penalty in relation to the committed offense, but by determining what property has been 'tainted' by unlawful use." Here, she argues, there has been no determination of how much

of Key's vehicle was "actually used" in commission of the underlying offense and that "[g]iven the very limited scope of relation or nexus between Ms. Key's car and her underlying offense of possession of marijuana, the permanent forfeiture of her car was an unfairly disproportionate forfeiture."

In reviewing the trial court's forfeiture decision, we defer to a trial court's factual findings where they are supported by substantial and competent evidence, *Stevens*, 139 Idaho at 674-75, 84 P.3d at 1042-43; *State v. Lewis*, 126 Idaho 282, 285, 882 P.2d 449, 452 (Ct. App. 1994), but we exercise free review on questions of statutory construction, *Stevens*, 139 Idaho at 675, 84 P.3d at 1043; *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001); *State v. Evans*, 134 Idaho 560, 563, 6 P.3d 416, 419 (Ct. App. 2000). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *Stevens*, 139 Idaho at 675, 84 P.3d at 1043; *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000).

Idaho Code § 37-2809 provides that:

In issuing any order under the provisions of this chapter, the court shall make a determination that the property, or a portion thereof in the case of real property, was actually used in violation of the provisions of this chapter. The size of the property forfeited shall not be unfairly disproportionate to the size of the property actually used in violation of the provisions of this chapter.

Idaho courts have not yet spoken to the application of I.C. § 37-2809, and thus we are faced with an issue of first impression. To the extent that Key argues that the "size" of the vehicle was "unfairly disproportionate" to the "size" of the property actually used in commission of the offense, we disagree. As the state points out, we are not faced with an issue here of, for example, a small portion of a large tract of land being utilized in the commission of a controlled substance offense. Here, the vehicle as a whole was utilized to facilitate Key's possession of the relatively large amount of marijuana. To the extent that "size" refers to value, we note that the parties stipulated that Key's vehicle was worth $1,500 and the total street value of the marijuana

found in the vehicle was, according to the testimony of an officer, approximately $1,000-$1,300. Therefore, there is no disproportionality in value.[10]

In addition, Key's argument that because the drugs bore only a "tangential and fleeting relationship" to the vehicle, permanent forfeiture of her vehicle was unfairly disproportionate, is not supported by Idaho's criminal forfeiture statutory scheme. The plain language of the statutes focuses on the size of the property--any other considerations concerning the nature of the drugs' relationship to the forfeitable property is thus irrelevant to the proportionality inquiry contained in I.C. § 37-2809. We conclude that the size of the property forfeited in this instance was not unfairly disproportionate to the size of the property utilized in Key's commission of possession of marijuana and therefore, the district court did not err in this respect in ordering forfeiture of the vehicle.

## D.     Excessive Fine

Key contends that the district court's order forfeiting her vehicle violated the Eighth Amendment prohibition against excessive fines. However, there is no indication in the record, nor does Key argue, that she raised the issue before the district court. In *State v. Ross*, 129 Idaho 380, 381, 924 P.2d 1224, 1225 (1996), the Idaho Supreme Court refused to address the appellant's excessive fines argument where it had not been raised before the district court because "excessive fine would not constitute fundamental error." Bound by the holding in *Ross*, we do not address Key's excessive fines issue for the first time on appeal.

## III.
## CONCLUSION

While we conclude that Key's constitutional challenges to the denial of a jury trial in her criminal forfeiture proceeding could be raised for the first time on appeal under the fundamental error doctrine, we also conclude that neither the United States Constitution nor the Idaho

---

[10]     We do note that while the circumstances here allow for a relatively straightforward conclusion that the "size" of the forfeiture was not disproportionate given the relatively low value of the car, it is not difficult to imagine a situation where such a conclusion would not come as easily. For instance, the issue would be troublesome if 5.23 ounces had been found in a person's luggage contained within that person's Lear jet or within a party's large recreational vehicle. In this manner, I.C. § 37-2809 proves inadequate to provide guidance in that it is unclear as to what is meant by "size." A clearer statutory framework would refer to, for example, the "value" of the forfeited property if that is the legislative intent.

Constitution requires that defendants be afforded the right to a jury trial in criminal forfeiture proceedings. We conclude that the district court did not err in finding that Key's vehicle had been used to facilitate her possession offense such that it was subject to criminal forfeiture. Finally, we also reject Key's claim that the forfeiture violated I.C. § 37-2809 because it was disproportionate to the "size" of the property actually utilized in the commission of the offense, and we will not review Key's assertion that the forfeiture constituted an excessive fine under the Eighth Amendment because she did not raise the issue below. Accordingly, the order of the district court forfeiting Key's vehicle is affirmed.

Chief Judge LANSING and Judge MELANSON, CONCUR.