**UNITED STATES of America,**
**Appellee,**

v.

**Philip FRUCHTER, Lawrence Braun, Dauda Yague, Mamadou Sylla, Samba William and Frank Singh, Defendants–Appellants,**

**Steven Fruchter, Mitchell Grand, Miguel Mercedes and Muninauth Pulchan, Defendants.**

Nos. 02–1422(L), 02–1451(CON), 02–1474(CON), 02–1542(CON), 02–1552(CON), 02–1561(CON).

United States Court of Appeals, Second Circuit.

Argued June 14, 2004.

Decided June 14, 2005.

Joshua L. Dratel (Marshall A. Mintz, on the brief), Joshua L. Dratel, P.C., New York, NY, for Defendant–Appellant Lawrence Braun.

Maurice H. Sercarz, New York, NY, for Defendant–Appellant Daouda Yague.

William J. Stampur, Hurwitz Stampur & Roth, New York, NY, for Defendant–Appellant Mamadou Sylla.

Daniel Noble, New York, NY, for Defendant–Appellant Samba William.

Arthur J. Viviani, New York, NY, for Defendant–Appellant Frank Singh.

Robin W. Morey, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Sarah Lai, Barbara A. Ward, Laura Grossfield Birger, and Gary Stein, Assistant United States Attorneys, on the brief), New York, NY, for Appellee.

Before: WALKER, Chief Judge, B.D. PARKER and WESLEY, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Defendants-appellants[1] Lawrence Braun, Daouda Yague, Mamadou Sylla, Samba William, and Frank Singh appeal their convictions in the United States District Court for the Southern District of New York (Michael B. Mukasey, *Chief Judge*), following an eleven-week jury trial, for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, the federal mail fraud statute, 18 U.S.C. § 1341, and the federal conspiracy statute, 18 U.S.C. § 371.

Appellants raise numerous challenges to their convictions and sentences, all but one of which we address in a summary order, filed today, that affirms the district court in part and remands for proceedings consistent with *United States v. Booker,* 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005). The sole issue addressed in this opinion is the constitutionality under the Sixth Amendment[2] of

---

1. Appellant Philip Fruchter withdrew his appeal with prejudice prior to briefing or oral argument.

2. Braun's other challenges to the forfeiture order are addressed in our summary order issued today.

the district court's imposition, pursuant to 18 U.S.C. § 1963, of a forfeiture order against appellant Braun, in light of the Supreme Court's decisions in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Booker,* where the forfeiture amount was based in part on facts found by the district judge by a preponderance of the evidence. The disposition of this appeal was delayed to accommodate the legal developments that followed upon *Blakely* and culminated in *Booker.* We now affirm.

## BACKGROUND

From at least 1994 until 1997, Braun—along with Steven and Philip Fruchter—owned and operated a mail sorting and metering company in Manhattan called American Presort, Inc. ("API"). API acted as a kind of middleman between the Postal Service and private companies engaged in bulk mailings. The companies would send large numbers of letters to API for sorting and (in some cases) metering. API would then either transport the processed mail to the post office or have the postal employees pick it up. In theory, this arrangement benefitted everyone concerned. Pursuant to the Postal Service's "work share" regulations, API—in return for doing preliminary mail processing work—received discounted postage rates. It then, in theory, passed some of those savings on to its customers, achieving a profit by charging a rate somewhere between the standard rate and the discounted rate. The customers saved money, and the Postal Service was spared a considerable amount of work.

In practice, however, API was overcharging its customers, passing off unsorted mail as sorted mail, using defective postage meters to get free postage, bribing postal employees and customer employees, and under-representing to the Postal Service the number of letters it had processed. Braun, a one-third co-owner of API, was in charge of finances and garnered substantial proceeds from API's illegal activities.

The government charged Braun in a multi-count indictment. After an eleven-week jury trial, Braun was convicted of (1) racketeering, based on mail fraud against API's customers; (2) RICO conspiracy; (3) general conspiracy; and (4) mail fraud against customers. The jury, however, acquitted Braun of mail fraud against the Postal Service and of making false statements to the Postal Service, and deadlocked on the charge of postage meter fraud.

On July 9, 2002, the district court sentenced Braun principally to sixty months' incarceration and ordered criminal forfeiture, pursuant to 18 U.S.C. § 1963, of approximately $20.7 million. That amount, like certain sentencing enhancements imposed by the district court, was based in part on proceeds derived from conduct with which Braun had been charged, but of which he was ultimately acquitted. This appeal followed.

## DISCUSSION

Braun claims that the district court's imposition of criminal forfeiture pursuant to 18 U.S.C. § 1963 violated the Sixth Amendment.[3] Specifically, Braun contends that under the Supreme Court's decisions

---

**3.** Section 1963 sets forth the criminal penalties for RICO violations. It provides, *inter alia,* that anyone convicted under § 1962, the substantive RICO provision, "shall forfeit to the United States ... any property constitut-

ing, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962." 18 U.S.C. § 1963(a)(3).

in *Blakely* and *Booker*, the district court was required to determine the forfeiture amount only by reference to conduct that had been proved to the jury beyond a reasonable doubt.

## I. Preliminary Issues

■ Before discussing the merits of Braun's claim, we address two preliminary matters. First, the parties dispute the proper standard of review. The government contends that Braun's forfeiture claim is reviewable only for plain error because he did not raise a Sixth Amendment challenge to the forfeiture order below.[4] *See Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 1548–49, 137 L.Ed.2d 718, 727 (1997). Braun, however, maintains that he expressly preserved before the district court a Sixth Amendment challenge to the inclusion of acquitted conduct in his sentence and forfeiture amount, and, therefore, that the harmless error standard applies. *See, e.g., United States v. Beverly,* 5 F.3d 633, 639 (2d Cir.1993). Determining the appropriate standard of review to apply to claims of constitutional error, however, is crucial only when an error actually exists. *See United States v. Dinome,* 86 F.3d 277, 282 (2d Cir.1996). Because we conclude that the district court committed no error, it is unnecessary to determine the applicable standard of review.

Second, we note that our consideration of Braun's claim is somewhat unusual. The Supreme Court has held that there is no Sixth Amendment jury trial right to a forfeiture determination. *Libretti v. United States,* 516 U.S. 29, 49, 116 S.Ct. 356, 367–68, 133 L.Ed.2d 271, 289 (1995). Relying on *Libretti,* we have previously rejected claims that proof beyond a reasonable doubt is required in forfeiture proceedings. *See, e.g., United States v. Bellomo,* 176 F.3d 580, 595 (2d Cir.1999). Because *Libretti* has direct application in this case, we are bound by its holding even if it might appear "to rest on reasons rejected in some other line of decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). Nevertheless, we consider Braun's forfeiture argument at some length because of the change wrought by *Blakely* and *Booker* in the law of criminal punishment. Although we are bound by *Libretti,* we decline to rely solely on that case's reasoning in affirming the district court's forfeiture order.

In *Libretti,* the Supreme Court held that "the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection." *Libretti,* 516 U.S. at 49, 116 S.Ct. at 367–68. Specifically, the Court found that criminal forfeiture

---

4. Forfeiture proceedings were conducted in May 2002, and the district court entered a preliminary order of forfeiture in June 2002, which was after *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), but well before either *Blakely* or *Booker.* The government argues that because Braun did not raise an *Apprendi* challenge to the forfeiture order, his claim is reviewable only for plain error. The government recognizes that if *Booker* and *Blakely* were considered "supervening judicial decision[s]," this court might apply our modified plain error rule, under which the government bears the burden of persuasion as to whether substan-

tial rights have been affected. *See United States v. Thomas,* 274 F.3d 655, 668 n. 15 (2d Cir.2001) (en banc). The continuing validity of that rule, however, is unclear. *See United States v. Bruno,* 383 F.3d 65, 79 n. 8 (2d Cir.2004). The government, however, asserts that *Booker* and *Blakely* are not supervening decisions because they are "no more directly applicable ... than was *Apprendi.*" Gov't Letter Br., at 2 n.3 (Mar. 25, 2005). As discussed above, this appeal does not require us to resolve either (1) whether *Booker* and *Blakely* are supervening decisions in this context, or (2) if they are, whether the modified plain error rule continues to apply.

was "an aspect of sentencing" and thus fell beyond the Sixth Amendment's purview. *Id.* at 48, 116 S.Ct. at 367–68; *see also Bellomo,* 176 F.3d at 595 ("[C]riminal forfeiture is part of the process of criminal sentencing. Fact-finding at sentencing is made by a preponderance of the evidence." (internal citation omitted)). In other words, *Libretti* and its progeny relied on a distinction between determinations of guilt and determinations of punishment. The latter, under *Libretti,* simply were not subject to the Sixth Amendment's requirements.

Braun argues that the distinction between guilt and sentencing determinations, however, has been undermined by three subsequent Supreme Court cases that have revolutionized criminal sentencing. In essence, Braun contends that *Apprendi* and its progeny have so undercut *Libretti* as to have overruled it sub silentio. In *Apprendi,* the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the *penalty* for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362–63 (emphasis added). Four years later, the Court extended *Apprendi*'s reach to Washington State's determinate sentencing regime, finding that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts [beyond what the jury has found], but the maximum he may impose *without* any additional findings." *Blakely,* 124 S.Ct. at 2537 (emphasis in original). Accordingly, the *Blakely* Court reiterated that the maximum sentence a judge may impose is the sentence authorized "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* (emphasis omitted). In *Booker,* the Supreme Court applied *Blakely*'s logic to the federal Sentencing Guidelines and found them unconstitutional because they mandated sentencing enhancements above the Guidelines range authorized solely by the jury's verdict, where the sentencing judge found certain facts by a preponderance of the evidence. 125 S.Ct. at 756.

Braun argues that in extending *Apprendi*'s Sixth Amendment holding to the sentencing context, *Blakely* and *Booker* implicitly call into question *Libretti*'s reasoning. For him it seems implausible that, after *Blakely* and *Booker,* a Sixth Amendment right to a jury trial is unavailable in the criminal forfeiture context simply because criminal forfeiture is not part of the guilt determination, but is rather part of the sentencing determination. *Blakely* and *Booker,* after all, found the Sixth Amendment's guarantees to be directly applicable to sentencing proceedings.[5] While *Libretti* remains the law until the Supreme Court expressly overturns it, *see Rodriguez de Quijas,* 490 U.S. at

5. Numerous circuit court opinions issued after *Apprendi,* but before *Blakely* and *Booker,* have held that *Apprendi* is inapplicable to criminal forfeiture proceedings because forfeiture is an aspect of "sentencing" rather than a "separate charge." *United States v. Keene,* 341 F.3d 78, 85–86 (1st Cir.2003); *see also United States v. Cabeza,* 258 F.3d 1256, 1257 (11th Cir.2001) (per curiam) ("Because forfeiture is a punishment and not an element of the offense, it does not fall within the reach of *Apprendi.*"); *United States v. Corrado,* 227 F.3d 543, 550 (6th Cir.2000) (same); *cf.*

*United States v. Swanson,* 394 F.3d 520, 526 n. 2 (7th Cir.2005) (noting in a post-*Blakely,* pre-*Booker* decision that "[w]e [previously] held ... that because criminal forfeiture [is an] element[ ] of the defendant's sentence rather than of the underlying crime, the government need only establish its right to forfeiture by a preponderance of the evidence rather than by proof beyond a reasonable doubt," and raising, without deciding, the question of "[w]hether this reasoning [would] survive[ ] the court's decision in *Booker* and *Fanfan*").

484, 109 S.Ct. 1917, we address Braun's reading of *Blakely* and *Booker* because we recognize that the conception of criminal punishment contained in those opinions is not necessarily the same conception of criminal punishment underlying the analysis in *Libretti.* We conclude that the preponderance standard established in *Libretti* nevertheless remains the rule.

## II. Sixth Amendment Analysis

Braun's argument has a certain surface appeal. *Booker* and *Blakely* broadly hold that any fact that increases the punishment imposed on a defendant must be found by a jury beyond a reasonable doubt. *See Blakely,* 124 S.Ct. at 2537 ("When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." (internal quotation marks and citation omitted)). And forfeiture is undoubtedly punishment. *See Libretti,* 516 U.S. at 41, 116 S.Ct. at 364 ("[F]orfeiture is precisely that: punishment."); *United States v. Lizza Indus., Inc.,* 775 F.2d 492, 498 (2d Cir.1985) ("Forfeiture under RICO is a punitive, not a restitutive, measure."). In-

deed, the statutory provision providing for RICO forfeiture is titled "Criminal penalties." 18 U.S.C. § 1963.[6] Therefore, the argument goes, any fact that increases the forfeiture amount is a fact that increases punishment; under *Blakely* and *Booker,* such facts must be found by a jury beyond a reasonable doubt.

█ Further examination, however, reveals several flaws in Braun's reasoning. As an initial matter, we observe that *Booker* itself expressly states that 18 U.S.C. § 3554 is still valid. *Booker,* 125 S.Ct. at 764 ("Most of the statute is perfectly valid." (citing specifically "§ 3554 (forfeiture)")). Section 3554 is the provision of the Sentencing Reform Act that requires the district court, when imposing a sentence on a defendant convicted under RICO, to order forfeiture in accordance with 18 U.S.C. § 1963, the RICO forfeiture provision at issue in this case. In other words, *Booker* itself suggests that a district court's forfeiture determination under § 1963 does not offend the Sixth Amendment.

More important, however, and ultimately fatal to Braun's argument, is the distinction between criminal forfeiture proceedings and determinate sentencing regimes.

6. At least one court has justified a preponderance standard in forfeiture proceedings in part by characterizing criminal forfeiture as historically a civil remedy. *See United States v. Melendez,* 401 F.3d 851, 856 (7th Cir.2005) (concluding preponderance standard suffices "because forfeiture has long been a civil remedy as well as a criminal sanction"); *United States v. Vera,* 278 F.3d 672, 673 (7th Cir. 2002). That court has taken the same approach in the restitution context, *see United States v. George,* 403 F.3d 470, 473 (7th Cir. 2005), while recognizing that the question is "by no means settled," *United States v. Pree,* 408 F.3d 855, 875 n. 20 (7th Cir.2005).

At common law, forfeiture was either *in personam* (criminal) or *in rem* (civil). *United States v. Bajakajian,* 524 U.S. 321, 331–32,

118 S.Ct. 2028, 2035, 141 L.Ed.2d 314, 327 (1998) (describing history of forfeiture). Although early forfeiture statutes in this country were of the *in rem,* civil variety, *see Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 683, 94 S.Ct. 2080, 2091–92, 40 L.Ed.2d 452, 468 (1974), modern criminal forfeiture—such as § 1963 forfeiture—is decidedly punitive in nature, *see Bajakajian,* 524 U.S. at 332 n. 7, 118 S.Ct. 2028 (expressly finding in Eighth Amendment context that RICO forfeiture is "punitive"); *Lizza Indus., Inc.,* 775 F.2d at 498 ("Forfeiture under RICO is a punitive, not a restitutive, measure."). If RICO forfeiture constitutes a criminal penalty, then the history of forfeiture as a civil remedy cannot alone justify a preponderance standard.

*Blakely* and *Booker* address determinate sentencing regimes. *See Blakely,* 124 S.Ct. at 2540 ("This case is . . . about how [determinate sentencing] can be implemented in a way that respects the Sixth Amendment."); *id.* at 2548–49 (O'Connor, J., dissenting) (warning that *Blakely's* holding will affect all determinate sentencing regimes); *see also Booker,* 125 S.Ct. at 749–50 ("[T]here is no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue in [*Blakely*]."). In a determinate sentencing regime, a jury finds facts that support a conviction. That conviction, in turn, authorizes the imposition of a sentence within a specified range, established either by statute or administrative guideline, which we call a determinate sentence. Under *Booker,* a Sixth Amendment violation occurs when a judge increases the punishment beyond that range based upon facts not found by a jury beyond a reasonable doubt.[7]

Criminal forfeiture, by contrast, is *not* a determinate scheme. *See* 18 U.S.C. § 1963(a)(3) (providing that a defendant shall forfeit "any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of [18 U.S.C. § 1962]"). As the Seventh Circuit recently pointed out, criminal forfeiture is not subject to any statutory maximum:

> We have previously held that *Apprendi* has no effect on criminal forfeiture proceedings because forfeiture provisions have no statutory maximum. *Apprendi*'s statutory maximum was supplied by

the statute of conviction; *Blakely's* is external—the statutory maximum is found not in the criminal code, but instead, the sentencing guidelines. The criminal forfeiture provisions do not include a statutory maximum; they are open-ended in that *all* property representing proceeds of illegal activity is subject to forfeiture.

*United States v. Messino,* 382 F.3d 704, 713 (7th Cir.2004) (internal citations omitted, emphasis in original). In other words, *Blakely* and *Booker* prohibit a judicial increase in punishment beyond a previously specified range; in criminal forfeiture, there is no such previously specified range. A judge cannot exceed his constitutional authority by imposing a punishment beyond the statutory maximum if there is no statutory maximum. Criminal forfeiture is, simply put, a different animal from determinate sentencing.

In sum, Braun's Sixth Amendment argument must fail. We do not read *Booker* and *Blakely* to require proof beyond a reasonable doubt in open-ended punishment schemes, such as RICO forfeiture. And, in any event, *Libretti* remains the determinative decision. Accordingly, the district court did not err when it applied a preponderance standard to the determination of Braun's forfeiture amount.

## III. Review of the Forfeiture Amount

 Under the preponderance standard, we find that the district court did not err when it ordered Braun to forfeit approximately $20.7 million. Braun, in essence, argues that the district court cannot

---

7. In *Booker,* for example, the jury convicted *Booker* of possessing with intent to distribute at least 50 grams of crack cocaine. *Booker,* 125 S.Ct. at 746. That conviction—which established that *Booker* possessed 50 grams of crack—authorized a sentence between 210 and 262 months. *Id.* The judge, however,

found, *inter alia,* that *Booker* had possessed an additional 566 grams of crack; these findings, made by a preponderance of the evidence under the previously mandatory Guidelines, mandated a sentence of 360 months to life imprisonment. *Id.*

use acquitted conduct as the basis for punishment. As an initial matter, we observe that the RICO forfeiture provision is broadly drafted and has long been liberally construed, *see Lizza Indus., Inc.*, 775 F.2d at 498, to reach all "proceeds" derived from racketeering activity, 18 U.S.C. § 1963(a)(3). Although we have not previously considered whether proceeds derived from conduct forming the basis of a charge of which the defendant was acquitted can be counted as "proceeds" of racketeering activity, it seems plain that they can. *See, e.g., United States v. Genova*, 333 F.3d 750, 762 (7th Cir.2003) ("The fact that Genova was acquitted of counts charging that he devoted the City's resources to his home-improvement projects does not eliminate all possibility of a forfeiture based on these activities."); *United States v. Edwards*, 303 F.3d 606, 643 (5th Cir.2002). As the Fifth Circuit has explained, the defendant "is not being punished [under 18 U.S.C. § 1963(a)] for committing the substantive acts found to be 'not proven.' He is being punished for conducting the affairs of an enterprise through a pattern of racketeering activity." *Id.* So long as the sentencing court finds by a preponderance of the evidence that the criminal conduct through which the proceeds were made was foreseeable to the defendant, the proceeds should form part of the forfeiture judgment. *See id.* at 644 ("The only requirement is that the criminal conduct be foreseeable.").

■ In Braun's case, the district court correctly found that Braun—as a one-third owner of API—was aware of the bulk of the racketeering proceeds that API received from its various Postal Service frauds as well as customer fraud. Indeed, the court took care to exclude from the forfeiture amount any proceeds resulting from conduct of which Braun—as the government conceded—was not aware and

had no reason to be aware. If Braun were aware of the scope of the racketeering enterprise, its proceeds were necessarily foreseeable to him. Because each conspirator is jointly and severally liable for all proceeds foreseeably derived from the racketeering activity charged in the indictment, *United States v. Corrado*, 227 F.3d 543, 554–58 (6th Cir.2000), the forfeiture amount was proper.

For the foregoing reasons, we hold that the district court's imposition of criminal forfeiture on Braun did not violate the Sixth Amendment and that it committed no error in calculating the forfeiture amount.

## CONCLUSION

As set forth in a separate summary order issued today, we AFFIRM in all other respects the convictions of all defendants-appellants. The judgment of the district court is hereby AFFIRMED and the case is REMANDED for further proceedings consistent with *Booker* and *Crosby*.