# Illinois Official Reports

## Appellate Court

---

### *People v. Koy*, 2014 IL App (2d) 130906

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. JAMIE A. KOY, Respondent-Appellant. |
| District & No. | Second District<br><br>Docket No. 2-13-0906 |
| Filed | July 8, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The order for the forfeiture of eight horses in respondent's possession under the Humane Care for Animals Act was upheld on appeal over respondent's contention that the Act was unconstitutional to the extent that it required the State to prove a violation of the Act only by a preponderance of the evidence at a forfeiture hearing, rather than beyond a reasonable doubt before a jury pursuant to the sixth amendment, since respondent failed to show that the forfeiture was a punishment arising from a criminal proceeding and not the result of a civil proceeding, and based on the civil nature of the forfeiture, the sixth amendment was not implicated. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, Nos. 10-CM-1830, 10-CM-2164, 13-CF-381; the Hon. Sharon L. Prather, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Christopher S. Carroll, of Law Office of Christopher S. Carroll, of Aurora, for appellant. |
|---|---|
| | Louis A. Bianchi, State's Attorney, of Woodstock (Daniel Kegl, Assistant State's Attorney, of counsel), for the People. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion. Justices Schostok and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1    Respondent, Jamie A. Koy, appeals the trial court's order granting the State's petition for forfeiture of eight horses that were in her possession. She challenges the forfeiture order, arguing that section 3.04(a) of the Humane Care for Animals Act (Act) (510 ILCS 70/3.04(a) (West 2012)) is unconstitutional because it required the State to prove that she violated the Act only by a preponderance of the evidence at the forfeiture hearing, not to a jury beyond a reasonable doubt as the sixth amendment guarantees. Because we find that the sixth amendment did not apply to the forfeiture hearing, we affirm.

¶ 2                                      I. BACKGROUND

¶ 3    This appeal arises out of the State's May 7, 2013, petition for forfeiture prior to trial pursuant to section 3.04(a) of the Act (510 ILCS 70/3.04(a) (West 2012)) and the subsequent forfeiture hearing. The State charged Koy pursuant to section 3.01 of the Act (510 ILCS 70/3.01 (West 2012)) with four felony counts of cruel treatment of companion animals. The forfeiture petition alleged as follows. On May 1, 2013, in conjunction with Koy's arrest, the McHenry County sheriff's office seized eight horses at the Clover Hill Stable in Crystal Lake, Illinois. Koy owned the horses, whose names were Mikey, Brier, Crede, Fluff, Paris, Leaf, Melissa, and Christopher. The horses were examined by Lisa Lembke, DVM, on April 25, 2013, and again on May 1, and she found that the horses were in extremely poor condition and that seizure was necessary for their well-being.

¶ 4    The State sent notice of its seizure to Koy on May 1, 2013, and on May 22, 2013, a McHenry County grand jury returned a 24-count indictment against Koy for violations of sections 3.01 and 3(a) of the Act (510 ILCS 70/3.01, 3(a) (West 2012)). The hearing on the forfeiture petition took place on August 2, 2013, with Lembke as the State's only witness.

¶ 5    Over Koy's objection, Lembke was accepted as an expert in veterinary medicine and animal cruelty and she testified at the hearing as follows.

¶ 6    On April 25, 2013, Lembke was involved in an investigation of Koy at the Clover Hill Stable. That day, Lembke performed visual inspections of seven of the eight horses. Her general observation was that the horses had lost a significant amount of weight since her previous observation, in December 2012. She had not observed two of the horses before, but those horses were "very thin." She saw little hay available for the horses, but she could not determine the total feed resources that day. Due to the horses' poor conditions, she issued a

¶ 7 citation to Koy requiring her to have a veterinarian come and provide care to the horses within 24 hours.

¶ 7 Lembke returned to the stables on May 1, 2013. The police arrested Koy and seized the horses. Lembke believed that Koy owned all eight horses, as Koy was the person keeping, feeding, and caring for them, although Koy claimed that two of the horses had different owners.

¶ 8 Lembke explained that horses are assigned Henneke body conditioning scores (HBCS) on a scale of 1 to 9; a score of 1 means that the horse is emaciated, 9 means that the horse is morbidly obese, and 5 means that the horse is fit. An HBCS of 5 is ideal. An HBCS is normally determined by both a visual exam and a palpation exam, although Lembke admitted that she did not perform a palpation exam on any of Koy's horses.

¶ 9 On May 1, Lembke assigned Paris an HBCS of 1. Paris was taken to the University of Wisconsin School of Veterinary Medicine for additional diagnostics and care because "her body condition was so emaciated [Lembke] felt she was at risk of dying." Her opinion, based on her visual exam and review of lab work, was that Paris had been starved. Paris responded well to a refeeding protocol, which resulted in significant weight gain and ruled out other medical possibilities for her emaciation, such as cancer. The lab results indicated anemia, which is consistent with starvation.

¶ 10 Lembke observed Leaf to be in similar condition and assigned him an HBCS of 1.5. Leaf was also taken to the University of Wisconsin and put on a refeeding program, to which he responded well, gaining significant weight and resolving a skin issue. Lembke's opinion was that Leaf had been starved.

¶ 11 Lembke observed that Melissa had poor muscle mass, abnormal boney prominences, and skin problems. Lembke opined that Melissa's HBCS was a 1 to 2[1] and that she had been starved. Again, a refeeding program at the University of Wisconsin resulted in significant weight gain and improvement in the horse's appearance.

¶ 12 Lembke assigned Christopher an HBCS of 2 to 3. He was in poor nutritional condition with boney prominences and a lack of muscle mass. He was put on a refeeding program and had gained some weight by the time of the hearing, although not as much as Lembke had hoped. She opined that his poor condition was "most likely" the result of starvation.

¶ 13 Lembke assigned Fluff an HBCS of 3. Fluff's HBCS was more difficult to assign because he had a winter coat, but despite the winter coat Lembke could observe his ribs and see that he had less muscle mass than would be expected. Fluff was put on a refeeding program at the Hooved Animal Humane Society in Woodstock, Illinois, where he gained significant weight and shed his winter coat. Lembke opined that Fluff's poor condition was due to starvation.

¶ 14 Lembke assigned Crede an HBCS of 2.5 to 3. He was in "thin nutritional condition," with prominent ribs and no fat covering his hind quarters. Crede was put on a refeeding program and showed substantial improvement–less prominent ribs, a glossier coat, and more flesh in his hind quarters and shoulders. Lembke opined that his poor condition was the result of starvation.

---

[1]Lembke testified that she often assigned a range when performing only a visual exam, because a visual exam alone tended to result in overestimating a horse's HBCS.

¶ 15    Mikey still had a rough winter coat and was "a little bit thin." She assigned him an HBCS of 3 to 4. He was put on a refeeding program, and as a result his coat became glossier and he gained "a little bit of weight." In Lembke's opinion, his thin condition was because "he didn't get enough to eat."

¶ 16    Finally, Lembke observed Brier, who was in the best condition of the horses. Brier was put on a refeeding program and as a result gained some weight. When asked for her opinion of his condition, she responded that "he wasn't being fed as much as he needed." She did not testify to an HBCS for Brier.

¶ 17    Based on Lembke's testimony and the exhibits introduced at the hearing (pictures of the horses), the trial court found that the State proved by a preponderance of the evidence that Koy violated the Act. Accordingly, it granted the State's petition for forfeiture of the horses and it entered an order to that effect.

¶ 18    Koy timely appealed.

¶ 19                                    II. ANALYSIS

¶ 20    Koy's sole argument on appeal is that section 3.04(a) of the Act (510 ILCS 70/3.04(a) (West 2012)) violates the sixth amendment to the United States Constitution because it requires the State to prove the necessary elements for forfeiture only by a preponderance of the evidence, not to a jury beyond a reasonable doubt.[2] Koy admits that she did not raise her constitutional claim in the trial court.

¶ 21    In a criminal case, a constitutional challenge to a statute may be raised for the first time on appeal. *People v. Clark*, 2014 IL 115776, ¶¶ 12-13; *People v. McCarty*, 223 Ill. 2d 109, 122-23 (2006). On the other hand, in a civil case, such a challenge is normally forfeited if not raised below. *Forest Preserve District v. First National Bank of Franklin Park*, 2011 IL 110759, ¶ 27; *In re Marriage of Winter*, 2013 IL App (1st) 112836, ¶ 27. However, a reviewing court may overlook general forfeiture principles in a civil case and consider the constitutional issue not raised below "if the issue is one of law, is fully briefed and argued by the parties, and the public interest favors considering the issue now." *Forest Preserve District*, 2011 IL 110759, ¶ 28; see *In re O.R.*, 328 Ill. App. 3d 955, 959 (2002) (appellate court considered issue that was one of first impression in Illinois and raised clear question of law despite its being first raised on appeal; forfeiture was a limitation on the parties, not on the court).

¶ 22    Nevertheless, a civil trial does not implicate the sixth amendment right to a jury trial. See *Fakes v. Eloy*, 2014 IL App (4th) 121100, ¶ 120 (civil proceedings do not implicate sixth amendment concerns); *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 856 (2010) (same).

---

[2]The particular portion of section 3.04(a) that Koy attacks as unconstitutional is the following:

"The State's Attorney may, within 14 days after the seizure, file a 'petition for forfeiture prior to trial' before the court having criminal jurisdiction over the alleged charges, asking for permanent forfeiture of the companion animals seized. *** In a 'petition for forfeiture prior to trial', *the burden is on the prosecution to prove by a preponderance of the evidence* that the person arrested violated Section 3.01, 3.02, 3.03, or 4.01 of this Act or Section 26-5 or 48-1 of the Criminal Code of 1961 or the Criminal Code of 2012." (Emphasis added.) 510 ILCS 70/3.04(a) (West 2012).

Therefore, unless the forfeiture hearing here was a criminal proceeding, Koy did not even have a sixth amendment claim to forfeit.

¶ 23    In her brief, Koy characterizes the forfeiture as "a patently imposed penalty following a finding of criminal acts by a preponderance of the evidence." She argues that section 3.04(a) of the Act required the State to prove that she committed a criminal offense only by a preponderance of the evidence. She paints the forfeiture hearing as a criminal proceeding in substance, if not in form. See *People v. Earl*, 121 Ill. App. 3d 254, 257 (1984) (forfeiture of weapons, although civil in form, was criminal in substance since its only objective was to penalize unlawful activity).

¶ 24    Koy relies on two United States Supreme Court cases. In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that, under the sixth and fourteenth amendments to the United States Constitution, any fact, other than a prior conviction, that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt. *Apprendi* concerned a criminal case where the defendant was convicted of an offense, and his sentence was subsequently increased based on a finding of bias (that his crime was racially motivated), which was beyond the findings reflected in the jury's verdict.

¶ 25    *Southern Union Co. v. United States*, 567 U.S. ___, ___, 132 S. Ct. 2344, 2357 (2012), expanded the *Apprendi* holding on criminal sentences to include criminal fines. *Apprendi*'s core concern was to reserve to the jury the determination of facts that establish punishable statutory offenses. *Id.* at ___, 132 S. Ct. at 2350 (citing *Oregon v. Ice*, 555 U.S. 160, 170 (2009)). "Criminal fines, like *** other forms of punishment, are penalties inflicted by the sovereign for the commission of offenses." *Id.*

¶ 26    Koy argues that *Southern Union* should be extended to apply to civil sanctions that rely on underlying criminal convictions. Koy relies on *Southern Union*'s "broad language" that any penalty "inflicted by the sovereign for the commission of offenses" should be within *Apprendi*'s scope. She argues that the *Apprendi* rule "logically embraces" civil enforcement proceedings, including forfeiture proceedings secondary to criminal proceedings, citing in support *Austin v. United States*, 509 U.S. 602, 622 (1993) (finding civil forfeiture constituted punishment for an offense under the eighth amendment's excessive-fines clause), and *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 165-66 (1963) (deprivation of citizenship for draft dodgers was a punishment subject to full procedural protections afforded criminal defendants). She further cites *United States v. Bajakajian*, 524 U.S. 321, 331-32 (1998), where the Supreme Court found a statutory forfeiture to be a "fine" for eighth amendment purposes, because the forfeiture served no remedial purpose, was designed to punish the offender, and could not be imposed upon innocent property owners.

¶ 27    The cases that Koy cites share a common vein, which serves to distinguish the cases from hers: the fines or forfeitures at issue triggered the *Apprendi* rule because they (1) served to punish (2) criminal offenses and were (3) based on facts beyond those determined by a jury beyond a reasonable doubt. See *Apprendi*, 530 U.S. at 468-69 (the maximum criminal sentence for the defendant's offense was improperly enhanced based on facts proved by a preponderance of the evidence); *Southern Union Co.*, 567 U.S. at ___, 132 S. Ct. at 2352 (it was error to punish convicted corporation with fines for days beyond those the jury found the corporation to have committed the offense); see also *Kennedy*, 372 U.S. at 186 (depriving citizenship for those convicted of evasion of military service obligations under the Selective

Training and Service Act of 1940 was a punishment that required procedural due process protections); *cf. Austin*, 509 U.S. 602 (civil forfeiture against property owner who pleaded guilty to a drug offense was a punishment sufficient to trigger the eighth amendment's excessive-fines protections); *Bajakajian*, 524 U.S. at 321-22 (forfeiture was punitive so that it implicated the eighth amendment's excessive-fines clause). *Austin* and *Bajakajian* are further distinguishable because they were decided within the context of an eighth amendment analysis. Moreover, all of these cases do little to demonstrate that a forfeiture hearing, before a criminal trial and thus unrelated to a conviction, is not a civil proceeding. Forfeiture proceedings are generally considered civil, and a civil forfeiture does not require a prior criminal conviction or even a prior criminal proceeding. See *People v. 1998 Lexus GS 300*, 402 Ill. App. 3d 462, 465 (2010) ("A forfeiture action is civil in nature and is an *in rem* proceeding against the item used in the commission of a crime."); *People v. $52,204.00 United States Currency*, 252 Ill. App. 3d 778, 781 (1993) ("[T]he fact that no criminal charges were brought against *** the claimant is not dispositive of this matter."); *People v. United States Currency $3,108*, 219 Ill. App. 3d 441, 444 (1991) ("Forfeiture proceedings are *in rem* and therefore civil in nature."). But see *People v. Braden*, 243 Ill. App. 3d 671, 676 (1993) (forfeiture proceeding under Illinois criminal code is *in rem* and thus technically civil in form, but it may also be considered "quasi-criminal" where the objective of forfeiture is to penalize unlawful activity).

¶ 28    Both Koy and the State cite *Libretti v. United States*, 516 U.S. 29 (1995). The State argues that *Libretti* held that the sixth amendment does not apply to forfeiture proceedings, and Koy argues that *Southern Union* implicitly overruled *Libretti*. However, *Libretti* addressed a different situation than did *Southern Union*, and we thus reject Koy's reading of *Southern Union* as overruling *Libretti*. In *Southern Union*, the Court held that fines beyond those authorized by the conviction–fines beyond what the jury's verdict allowed–violated the *Apprendi* rule. *Southern Union*, 567 U.S. at ___, 132 S. Ct. at 2352. In *Libretti*, the Court held that forfeiture as an aspect of sentencing for a criminal offense did not fall within the sixth amendment's protection, that is, there was no right to a jury verdict on the issue of forfeitability. *Libretti*, 516 U.S. at 49. *United States v. Fruchter*, 411 F.3d 377, 382 (2d Cir. 2005), is instructive in understanding the difference between the two cases. There, the Second Circuit distinguished between determinate sentencing regimes and criminal forfeiture amounts. *Id.* at 382-83. In a determinate sentencing regime, the jury found facts that supported a conviction, and that conviction authorized the imposition of a sentence within a specified range as established by statute or administrative guidelines. *Id.* at 383. A sixth amendment violation occurred if and when a judge increased the punishment beyond the specified range of punishment, based upon facts that a jury did not find beyond a reasonable doubt. *Id.* In contrast, criminal forfeiture was not a determinate scheme, at least not under the federal forfeiture statute that the *Fruchter* court addressed. The federal forfeiture statute was open-ended, with no range or statutory maximum. *Id.* A judge could not exceed his constitutional authority by imposing a punishment beyond the statutory maximum, because there was no statutory maximum. *Id.* There was, accordingly, no sixth amendment right to the determination of forfeitability, as any forfeiture under the statute was authorized by the jury's verdict. See *Libretti*, 516 U.S. at 49 (no constitutional right to a jury determination as to the appropriate sentence to be imposed). Indeed, we agree with the State insofar as *Libretti* holds that the sixth amendment does not apply to a determination of criminal forfeiture as an aspect

of sentencing. *Id.* The Ninth Circuit cited *Libretti* earlier this year, finding that *Libretti* was binding precedent that directly contradicted the appellant's argument that the sixth amendment guaranteed him a right to a jury verdict in his criminal forfeiture proceeding. *United States v. Wilkes*, 744 F.3d 1101, 1109 (9th Cir. 2014). The *Wilkes* appellant's procedural posture was similar to those of the appellants in *Apprendi* and *Southern Union*: he was convicted of various offenses (wire fraud, bribery, money laundering, etc.), and his sentence included incarceration and the criminal forfeiture of over $600,000, which he challenged, unsuccessfully, on sixth amendment grounds. Furthermore, the *Wilkes* court highlighted that the Supreme Court "has cautioned courts of appeals against concluding that 'recent cases have, by implication, overruled an earlier precedent.' " *Id.* (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)). "[I]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions *** follow the case which directly controls," and leave it to the Supreme Court to overrule its own decisions. (Internal quotation marks omitted.) *Id.* (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)).

¶ 29 For the following reasons, we hold that a hearing on the forfeiture of companion animals before trial, pursuant to section 3.04(a) of the Act, is not a criminal proceeding and therefore does not implicate the sixth amendment right to a jury trial. Neither *Apprendi* nor *Southern Union* applies here. Both cases concerned the imposition of punishment beyond that authorized by a jury's verdict, not whether a forfeiture proceeding was civil or criminal. In fact, neither case involved a forfeiture proceeding, nor was there any debate that the enhanced sentences constituted punishment for purposes of the sixth amendment.

¶ 30 Here, Koy has not shown why her forfeiture hearing was a criminal proceeding, beyond bald assertions that forfeiture is punishment for her alleged crimes. Every sanction, civil or otherwise, produces some punitive effect. See *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 777 n.14 (1994) ("[E]ven remedial sanctions carry the 'sting of punishment.' "). Illinois case law clearly establishes the civil nature of statutory forfeiture proceedings. See, *e.g.*, *In re Twenty-Seven Thousand Four Hundred Forty Dollars*, 164 Ill. App. 3d 44, 46 (1987) ("It is well settled that statutory forfeiture actions are considered civil in nature and do not depend upon a prior criminal conviction."). *Southern Union* is not as broad as Koy suggests: it merely extends the *Apprendi* rule to include criminal fines, and it certainly does not extend sixth amendment protections to civil forfeiture proceedings.

¶ 31 The civil nature of the forfeiture here is further supported by the Act's purpose. The Act both promotes the humane care and treatment of animals and punishes penalties for violations thereof. See *People v. Shanklin*, 329 Ill. App. 3d 1144, 1146 (2002); see also *Illinois Gamefowl Breeders Ass'n v. Block*, 75 Ill. 2d 443, 453-54 (1979) (sections of Act with purpose of alleviating evils related to animal fighting were valid exercise of State's police power). Section 3.04(a) provides that the State's Attorney may file a "petition for forfeiture prior to trial" and that the only possible ramification of the petition is the permanent forfeiture of the animals seized in conjunction with the arrest. 510 ILCS 70/3.04(a) (West 2012). In order to convict Koy, the State must still proceed at trial to prove that she committed the alleged offenses beyond a reasonable doubt. Section 3.04(a) allows the State to take action before trial, not to punish her but, rather, in the spirit of the Act, to ensure the well-being and continued recovery of the injured animals.

¶ 32        Moreover, section 3.04(a) is concerned solely with the animals related to the arrest, not with the arrestee. The section begins by permitting a police officer to take possession of "some or all of the companion animals in the possession of the person arrested." 510 ILCS 70/3.04(a) (West 2012). After taking possession of the animals, the officer must file with the court an affidavit concerning the animals seized and at the same time deliver to the court an inventory of the animals. *Id.* The officer must place the animals in the custody of an animal control agency or animal shelter. *Id.* The State's Attorney may then, within 14 days of the seizure, file a "petition for forfeiture prior to trial," the filing and granting of which gave rise to this appeal. Section 3.04(a) stands in contrast to sections 3.04(b) (notice to owner) and 3.04(c) (additional penalty of forfeiture permitted upon conviction), as section 3.04(a) addresses only the procedure for handling the animals incident to the arrest.

¶ 33        Accordingly, Koy has not demonstrated why the forfeiture of the horses under section 3.04(a) was a punishment that resulted from a criminal proceeding and not the result of a civil proceeding. Because the forfeiture proceeding was civil, the sixth amendment was not implicated, and we reject Koy's lone argument on appeal.

¶ 34                                    III. CONCLUSION

¶ 35        For the aforementioned reasons, the McHenry County circuit court's order of forfeiture of the eight horses is affirmed.

¶ 36        Affirmed.